# MARYLAND REPORTS.

ALBERT N. HORNER, and LEVI Z. CONDON, Executors. of ALEXANDER H. HORNER vs. DANIEL FRAZIER.

*Statute of Frauds—Pleading—Demurrer—Evidence—Acts of 1864, ch. 109, and 1868, ch. 116, relating to the Competency of Witnesses—Notice—Measure of Damages—Practice.*

It is not necessary in pleading to allege a promise to which the Statute of Frauds applies, to be in writing. If it appear in the proof, at the trial, to be in writing it is sufficient.

A plea, in addition to the general issue plea, that the promise was not in writing, is an argumentative answer to the declaration, asserting nothing which is not cognizable under the general issue, and is therefore demurrable.

The object of the Evidence Acts of 1864 and 1868, was to remove restrictions and not to impose them. Only such exceptions were made as seemed necessary to preserve mutuality, and prevent undue advantage being given to a survivor in a contract where the other contractor was dead.

It is only where the suit is upon the cause of action, to which one party is dead, that the other party is excluded, to preserve mutuality.

Where such contract only incidentally arises in another suit, on another contract and about something else, as matter of evidence touching this suit, the death of one party to it does not close the mouth of the other; but he is a competent witness.

Horner and Condon, Ex'rs *vs.* Frazier.

D. F. brought an action for damages against A. H. H. for a breach of contract. The declaration stated that certain land of the plaintiff was to be sold at trustee's sale, and that the defendant proposed to the plaintiff that the plaintiff should become the purchaser of the land at the sale, and promised the plaintiff that if he would confess judgment in favor of the defendant for the amount of a certain unfounded claim the defendant then had against the plaintiff, (describing it,) the defendant in consideration thereof would advance and supply to the plaintiff all the money required to meet the payments of the purchase money under said sale, upon the understanding that the money which should be so advanced should be returned to the defendant by the plaintiff after the latter had effected a sale of the land so to be bought. That the plaintiff accepted said proposal, and consented and agreed to purchase said land at said trustee's sale upon the understanding aforesaid, and did in fact become the purchaser at said sale. The declaration averred a full compliance by the plaintiff with his part of the contract, and a failure by the defendant to keep his engagement therein. HELD:

1st. That this was not a contract for an interest in land, and was not obnoxious to the land clause of the fourth section of the Statute of Frauds.

2nd. That neither was it a contract within the year clause of the fourth section of the Statute, and so required by the Statute to be in writing.

3rd. That to bring a case within that clause it must appear that it was expressly and specifically agreed that the contract was not to be performed within a year.

4th. That a full performance by one of the parties within the year will take the case out of the Statute.

5th. That it was unnecessary to decide whether the contract on the part of the defendant was to be performed by him within a year, for the part of the contract which the plaintiff was to perform, namely, giving the required judgment, was to be, and was, immediately performed; so that the contract was thereby taken from the operation of the Statute.

At the time of the trustee's sale the defendant advanced only a part of the cash payment and joined in the notes for the two deferred payments—subsequently the property was resold at the purchaser's risk for the non-payment of the balance of said cash payment and

Horner and Condon, Ex'rs *vs.* Frazier.

of the credit instalment first falling due. The failure of the defendant to furnish the money to pay these sums was the breach alleged. HELD:

That it was not necessary for the plaintiff to call upon the defendant to furnish the money, and to notify him of the plaintiff's inability to meet the payments, before he could be held under the contract.

Where no specific rule for the assessment of damages is declared in the instructions offered, it is not incumbent upon the Court, unasked, to fix a standard for the jury's regulation.

APPEAL from the Court of Common Pleas.

This is an action instituted by Daniel Frazier, the appellee, against Alexander H. Horner. The defendant died pending the proceedings, and the appellants, as his executors, were substituted as defendants. The case is stated in the opinion of the Court.

*First Exception.*—Stated in the opinion of the Court.

*Second Exception.*—The plaintiff offered the three following prayers:

1. That if the jury shall believe from the evidence that the plaintiff's farm in Carroll County, Maryland, was about to be sold under a decree of the Circuit Court for Carroll County, in equity, passed in the cause of Elias Brothers, mortgagees, against the said plaintiff, and which said farm the plaintiff was anxious to retain and keep, and that the defendants' testator, the said Alexander H. Horner, offered the said plaintiff that if he, the said plaintiff, was desirous of saving said farm, and bought it in at the sale thereof, under the said decree aforesaid, that he, the said Horner, would loan and advance to him, the said plaintiff, in cash, the sum of two thousand dollars, to pay upon the first or cash payment, and the balance of the first or cash payment when the same should be required by the trustee, and would endorse the said Frazier's notes, or join with said Frazier in notes to said trustee, ap-

pointed under said decree aforesaid, for the deferred or credit payments, and would loan and advance to the said plaintiff the several sums of money necessary to pay off and take up the said several promissory notes as and when they should mature and become payable, and would see him, the said plaintiff, out, and save him from loss by such loans and advances until after the said plaintiff could sell and dispose of said property without loss, if he, the said plaintiff, would confess judgment in favor of the said Alexander H. Horner, upon a certain joint and several promissory note, dated the 16th day of August, 1869, for the sum of $870, payable one day after date, to the order of said Horner, together with the accumulated interest and costs upon said note, amounting in the aggregate to the sum of $1263.11, which said note had theretofore been made by a certain Joseph Broumel and the plaintiff, for the accommodation of the said Horner, and against which said note, or any action thereon by the said Horner, the said plaintiff then and there had a just and perfect defence, (if the jury shall find said plaintiff had a just and perfect defence against said note,) as also the said sum of $2000 advanced, or to be advanced to said plaintiff, to pay upon said first or cash payment aforesaid; that if the jury find from the evidence the foregoing facts, and shall further find from the evidence that the said plaintiff, upon the said agreements and promises aforesaid, (if they shall find said promises and agreements,) bought in the said property at the said sale, and confessed the said judgment (offered in evidence) in favor of the said Alexander H. Horner, for the sum of $3263.11, and costs, and that said judgment included as well the sum of $1263.11, the amount of said promissory note for $870, with interest and costs, as the said sum of $2000 advanced by said Horner to said plaintiff, and that the said Horner did loan and advance to the said plaintiff the said sum of $2000, to pay upon the said first or cash payment for said prop-

erty, and did join with the said plaintiff in promissory notes to the said trustee for the deferred or credit payments for said property; that if the jury find from the evidence these acts of performance on the part of the plaintiff and the said Horner, and shall further find that the said Horner afterwards refused to loan and advance to the said plaintiff the balance of the cash or first payment when demanded by the said trustee, and to loan and advance to the said plaintiff the several sums of money necessary to take up and pay off the said promissory notes for the deferred or credit payments, according to his agreement with the said plaintiff, if they shall find such agreement, and that the said plaintiff was unable at that time to pay said balance of said cash or first payment, or the said last mentioned promissory notes, or either of them, if they shall so find, and that by reason of said refusal of said Horner to comply with the said agreement and loan, and advance to the said plaintiff the moneys to pay off the said promissory notes for the deferred or credit payments, and balance of the cash or first payment aforesaid, if they shall so find, the said property aforesaid was resold under order of the Circuit Court for Carroll County, in equity, at the risk of the plaintiff, and that the said plaintiff thereby suffered loss, if they shall so find, then their verdict must be for the plaintiff on the first count of the declaration for such amount as they shall find from the evidence the plaintiff sustained by reason of said default on the part of said Horner.

2.   That if the jury shall find from the evidence that the note for $870, referred to in the declaration, was made by the said Joseph Broumel, and the plaintiff, Daniel Frazier, for the accommodation of the defendants' testator, Alexander H. Horner, or that the said Frazier signed said note at the request of said Alexander H. Horner, and for his accommodation, then the said Frazier had a valid and lawful defence against said note in the hands of the said

Horner or if the jury shall find that the plaintiff has or had paid said accommodation note to any person claiming the same as the assignee of the said Horner, then the said Frazier is entitled to recover the same back again from the said Horner, or his legal representatives, with all his costs and interest paid on the same, under the fourth count in the declaration; provided the jury shall further find said Horner did not comply with his contract, if they find said contract; provided, however, that if the jury find for the amount of this note, under this prayer, they cannot also find for the amount of the note under the plaintiff's first prayer.

3. That if the jury shall find from the evidence that the plaintiff, Frazier, sold and delivered to the said A. H. Horner, in his life-time, pork, and that said pork is not paid for, they must find for the plaintiff under the second and third counts of the declaration.

The defendants offered the four following prayers:

1. That if the jury find from the evidence that the only contract or agreement which Alexander H. Horner entered into with Daniel Frazier, was, that in consideration that Frazier would confess judgment for the amount of the note for $870, with interest and costs, and include therein the sum of two thousand dollars, that said Horner would lend said Frazier said sum of two thousand dollars to pay on account of the cash payment required to purchase the farm spoken of, and that he and James W. Jordon would endorse his notes for the deferred payments; and shall further find that said Horner did advance said sum of two thousand dollars, and that he and said Jordon did endorse said notes, then the plaintiff cannot recover on the first count in the declaration, even although the jury may find that said Horner did say to said Frazier on the day of sale, that he would back him or see him out, or words to that effect.

2. That if the jury find from the evidence, that the only contract which Alexander H. Horner made with

Daniel Frazier, was, that he would furnish the $2,000 for the cash payment, and endorse the notes, along with Jordon, for the deferred payments, and furnish so much of the money to pay them when they became due as said Frazier could not raise, and see him out on the farm until it was sold for a fair price; and shall further find that said Horner did advance said two thousand dollars, and did endorse said notes; and shall further find that said Frazier, after his said purchase, and before the resale, had an opportunity to sell said land at a fair price, and for a sum sufficient to reimburse himself for all the money he had agreed to pay for the same, and refused to sell the same, then the plaintiff cannot recover on the first count in the declaration.

3. That if the jury find from the evidence that the plaintiff sold to the defendants' testator the pork claimed for in this case, and that the same was afterwards settled and adjusted between them, then the plaintiff cannot recover anything in this action on account of said pork.

4. That under the pleadings and evidence in the cause, the plaintiff cannot recover on the first count in the declaration:

1st. Because there is no evidence in the cause legally sufficient to support the same.

2nd. Because no sufficient consideration has been proven, for the promises and agreements alleged to have been made by Alexander H. Horner.

3rd. Because none of said promises and agreements were in writing, and no action can be maintained thereon under the Statute of Frauds.

The Court, (DUFFY, J.,) granted the prayers of the plaintiff and the first, second, and third prayers of the defendants, and rejected the defendants' fourth prayer. The defendants excepted, and the verdict and judgment being against them, appealed.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, and RITCHIE, J.

*William A. Hammond,* and *John J. Wade,* for the appellants.

*William S. Bryan, Jr., R. E. Jordan,* and *H. P. Jordan,* for the appellee.

IRVING, J., delivered the opinion of the Court.

The declaration in this case after setting out that certain land of the plaintiff was about to be sold at trustee's sale, alleges "that the defendant proposed to the plaintiff that the plaintiff should become the purchaser of the said land at the sale, and promised the plaintiff, that if he would confess judgment in favor of the defendant for the amount of a certain unfounded claim the defendant then had against the plaintiff upon a certain joint and several promissory note, dated the 16th of August, 1869, for the sum of $870, payable one day after date, to the order of the defendant, which note had been theretofore made by a certain Joseph Broumel and the plaintiff who joined therein for the accommodation only of said Broumel, and as his surety and against said note and any action of the defendant thereon, the plaintiff then and there had a just and perfect defence, that he, the said defendant, in consideration thereof would advance and supply to the plaintiff all the money required to meet the payments of purchase money under such trustee's sale, upon the understanding that the moneys which should be so advanced should be returned to the defendant by the plaintiff after the plaintiff had effected a sale of the land so to be bought, which subsequent sale the defendant represented to the plaintiff that he could easily make at a large advance upon the price at such trustee's sale; and the plaintiff, induced by the persuasions of the defendant, and relying upon his promise

Horner and Condon, Ex'rs *vs.* Frazier.

aforesaid, and believing that the expected profits from such resale would exceed the amount of the judgment so to be confessed, accepted the said proposal of the defendant, and consented and agreed to purchase said land at trustee's sale upon the understanding aforesaid, and did in fact, become the purchaser at said trustee's sale for the price of $10,872.40." The declaration then avers the full compliance on the part of the plaintiff with his part of the contract, and avers a failure on the part of the defendant, to keep his engagement therein, whereby the plaintiff claims to be greatly damaged. There is also a count for goods bargained and sold; for work and materials provided, and for money found to be due "on accounts stated between them." After having pleaded "never indebted," and that he "never promised" as alleged, the defendant filed two additional pleas, varying only in form, by which it was alleged that the promise was not in writing. The demurrer to these pleas presents the first question for determination. The Circuit Court sustained the demurrer, and, in so doing, we think, was clearly right. In *Ecker vs. Bohn*, 45 *Md.*, 287, and *Ecker vs. McCallister*, 45 *Md.*, 302, it was decided that it was not necessary to allege a promise to which the Statute of Frauds applied, to be in writing; the Court saying, "if it appear in the proof, at the trial, to be in writing, it is sufficient." In holding the Statute to affect the proof only, the Court observed and followed the well-established rule of pleading, that "where an act is valid at common law, but is regulated as to the mode of performance by statute, it is sufficient to use such certainty of allegation as was sufficient before the statute." *Stephen on Pleading*, 295 and 330; *Spencer vs. Pearce*, 10 *G. & J.*, 295. The pleas were an argumentative answer to the declaration and asserted nothing which was not cognizable under the general issue already pleaded, and were, therefore, demurrable. *Chitty on Pl.*, 552; *Reade vs. Lamb*, 6 *Exch.*, 130; *Leaf*

Horner and Condon, Ex'rs *vs.* Frazier.

*vs. Teuton,* 10 *M. & W.,* 393; *Hayselden vs. Staff,* 5 *Ad. & Ellis,* 160. Such defects formerly could 'only be attacked by special demurrer, which is no longer allowed here, having been abolished by the Code, and now it is admissible to raise the question under general demurrer, as here allowed. *Miller vs. Miller,* 41 *Md.,* 623.. The question might have been raised upon motion to strike out the plea, but the decision of *Miller vs. Miller* has been regarded as fully settling the question in Maryland, in favor of the right to raise the question under general demurrer. 1 *Poe's Pleading and Practice at Law,* secs. 639 *and* 640, (2d *Edition.*)

At the trial, Joseph Broumel, who was a joint maker with the plaintiff of the promissory. note for $870 to Alexander H. Horner, (alleged in the declaration as an unfounded claim, the confession of judgment upon which to Horner is alleged as the consideration for Horner's promise on which suit was brought,) was admitted as a witness to prove the unfounded character of that note. The first exception raises the question whether this witness was competent, it appearing at the trial, that Alexander H. Horner, the payee of the note, was then dead, and his executors were the parties defendant to the suit.

Under the construction which has been given, the Evidence Acts of 1864 and 1868, by numerous 'decisions of this Court, we think no error was committed in admitting Broumel's testimony. The object of those Acts was to remove restrictions and not to impose them. Only such exceptions were made as seemed necessary to preserve mutuality, and to prevent undue advantage being given to a survivor in a contract where the other contractor was dead. *Downes, Ex'r vs. Md. & Del. R. R.,* 37 *Md.,* 104; *Johnson vs. Heald,* 33 *Md.,* 352; *Swartz vs. Chickering,* 58 *Md.,* 295. It is only where the suit is upon the cause of action, to which one party is dead, that the other party is excluded to preserve mutuality. Where such contract

only incidentally arises, in another suit, on another contract, and about something else, as matter of evidence touching this suit, the death of one party to it does not close the mouth of the other; but he is a competent witness. *Smith vs. Wood*, 31 *Md.*, 297; *Wright vs. Gilbert*, 51 *Md.*, 157; *Leiter, et al, vs. Grimes*, 35 *Md.*, 434. A contrary view has been contended for on the authority of *Standford vs. Horwitz, Adm'r*, 49 *Md.*, 529, but we do not find anything in that case inconsistent with the ruling here made and supported by the authorities already cited. In *Standford vs. Horwitz*, the proceeding was upon the mortgage to secure certain notes. The witness who was excluded was a party to the mortgage debt, and stated the signature to be his own. It was desired to prove by him that he was acting merely for his son, and that the note was tainted with usury. This was not permitted, and with manifest propriety, as the mutuality in such case would not be preserved. In the case before us, the suit is upon a contract to which the witness Broumel was no party, and the contract to which he was a party, only incidentally figures in the suit as matter of evidence.

The second bill of exceptions embraces the prayers which were granted and refused. The fourth prayer of the defendant, which was rejected, was treated not only as a prayer to take the case from the jury, but as interposing special exceptions to the plaintiff's first prayer which was granted. It states three propositions, 1st, that there is no evidence in the cause legally sufficient to support the same; 2nd, that no consideration has been proven for the promise sued on, and 3rd, because none of said promises and agreements can be maintained under the Statute of Frauds.

If the provisions of the Statute of Frauds do not prevent recovery, there was, undoubtedly, sufficient consideration for the defendant's undertaking, and proof from which the jury could find for the plaintiff. The $1263.11,

amount of principal and interest of the $870 note on which suit was pending, and the validity of which was denied as an actual debt, for which the plaintiff confessed judgment, together with the $2000 actually advanced on the contract, certainly form a real and valuable consideration for the undertaking on the part of Horner, on which the judgment appealed from was obtained. Frazier treated as valid a note which he contested, and abandoned defence, and confessed judgment, which was afterwards made by execution. The jury had evidence that Frazier did not in fact, owe that money to Horner, and, if he did not, there was certainly sufficient consideration for the contract sued on in this case; and authorities cannot be needed for so transparent a proposition. Whether the contract sued on was proved as laid in the declaration, was a question for the jury upon all the proof submitted. Whether it was an enforceable contract is the question presented by the appellants' fourth prayer. The contention is that it was void, not being in writing as required by the Statute of Frauds.

It was not a contract for an interest in land, and was not obnoxious to the land clause of the fourth section of the Statute. The decision of *Lamm vs. Port Deposit Association,* 49 *Md.,* 240, would seem to be conclusive on that point. This we understood as conceded at the hearing; and the only ground relied on under the Statute is, that it was required to be in writing because it was a contract not wholly to be performed within a year from the making thereof. To bring a case within the year clause of the fourth section of the Statute, it must appear that it was expressly and specifically agreed that the contract was not to be performed within a year. This was the construction given to the statute in *Fenton vs. Emblers,* 3 *Burrows,* and that construction has been unqualifiedly adopted in this State. In *Ellicott vs. Peterson's Ex'rs,* 4 *Md.,* 488, Judge LEGRAND says "the Statute will not apply

where the contract can, by any possibility, be fulfilled or completed in the space of a year, although the parties may have intended its operation should extend through a much longer period." This view was again unequivocally pronounced in *Cole vs. Singerly*, 60 *Md.*, 353. In *Ellicott vs. Peterson*, it is also said that a full performance by one of the parties within the year will take the case out of the Statute. *Donellan vs. Read*, 3 *Barnwell & Adolphus*, 899, which so decides, is there cited with approval. The case of *Boydell vs. Drummond*, 11 *East*, 142, decides the same thing, and that seems still to be the law of England. That view has not universally obtained, and there is some conflict of decision upon it; but it seems to be the accepted law of Maryland. *Alex. Brit. St.*, 523. Testing this case by these principles, we do not think the Statute applies. The declaration sets out a contract which it is entirely possible may be performed within a year, and it is contended by the appellee that there is nothing in the proof which shows it was not to be when made. The claim is that the appellants' testator in consideration of the appellee giving him a judgment including a claim which was repudiated by the appellee and claimed to be without foundation, promised to furnish the money to the appellee to enable him to purchase a certain farm, about to be sold at trustee's sale, which the appellants' testator desired him to buy. The contract is alleged to have been made on the day of sale, and that the terms of sale when the contract was made was one-half cash on the day of sale, and the balance in twelve months. At the time of the sale, it would seem, the terms were changed, and one-third cash only was required, and the residue was put on a credit of one and two years in equal instalments; of the cash payment the appellants' testator furnished two thousand dollars at the time, and joined in the notes for the deferred payments at one and two years. Sixteen hundred and twenty-four dollars and thirteen cents, of the

cash payment was left unpaid; and subsequently the property was resold at the purchaser's risk for the non-payment of this balance of .cash payment, and the non-payment of the credit instalment first falling due. The failure of the appellants' testator to furnish the money to pay these sums is the breach alleged. At the time of the making the contract, the appellee confessed judgment in accordance with his contract for the two thousand dollars then advanced, and for the Broumel note which, with interest added, amounted to $1263.11, and the whole judgment amounting to $3263.11, was subsequently made and satisfied through an execution thereon. It is unnecessary for us to determine whether the contract on the part of the appellant's testator was performable by him within a year; for, as we look at it, the part of the contract which the appellee was to perform was to be *immediately* performed and *was immediately* performed; so that the contract was thereby, under the law as already laid down, taken from the operation of the Statute.

George Frazier testified, "that Horner told his father, (the appellee,) that he would lend him the money to make the payments if he would confess judgment for the Broumel note." This was on the day of sale. He remembered nothing of there being deferred payments. Miss Noretta Frazier after giving testimony tending to show the Broumel note was not really owing by her father, (the appellee,) further testified, "that Horner told her father to buy the farm in under the foreclosing mortgage and that he would furnish the money for the first payment, and go security for the credit payments, and pay as they became due if her father did not have the money to pay them, that is if he would settle this Broumel claim in Court at that time, that is, if he would give judgment including that claim."

There was another witness who testified to a contract differing in some respects materially from that stated by

George and Noretta Frazier. It was for the jury to say which was right. It was not a case to be taken from the jury for entire want of evidence legally sufficient to maintain the suit. The jury manifestly took the version of George and Noretta Frazier as it was entirely competent for them to do. The plaintiff having done all he was required by the contract to do, and all he could do, namely having given the required judgment, and Horner through it having received payment of a repudiated claim, we think it would be making the Statute of Frauds an engine of oppression and fraud rather than a means of preventing fraud, to allow its application to such a case as this, under the facts. We cannot assent to the contention of the appellants that it was necessary for the appellee to call on Horner to furnish the money and to notify him of the plaintiff's inability to meet the payments, before he could be held under the contract, and that because it is not so alleged no recovery can be had. He knew the cash payment he was to pay was not met by the $2000 he did pay on the day of sale, and which was included in the judgment, whereas if the testimony that he was to furnish it all was true, he was knowingly in default as to the residue of the cash payment. As to the deferred payments he had signed the notes, and become a joint obligor, and knew, without further notification, when they were due, and if the contract alleged in the *narr.* was made, of which there was certainly some evidence, it was his duty to see that they were paid. Besides the resale was ordered, after proceedings for default, of which he must have had notice. Being of opinion, that the Circuit Court was right in rejecting the fourth prayer of the appellants, and that none of the reasons assigned in *it* were sufficient to justify the rejection of the plaintiff's first prayer, it only remains for us to consider whether any other objection to the first prayer of plaintiff is maintainable ; and whether it and the other prayers of the plaintiff were

properly granted. If they were, the case was properly committed to the jury; for upon the defendant's *view* of the proof, and its legal effect, all the prayers of the defendants were granted, except the fourth, which has already been examined and passed upon, adversely to the appellants.

As to the second prayer of the plaintiff, assuming there was evidence to go to the jury to sustain the action, we did not understand any serious objection to be made to it, and we certainly can see none. As to third prayer of the appellee, we see no solid ground for objection to it. There was some evidence that the appellants' testator owed the appellee for pork, and if so, it was certainly competent for the jury to find for whatever was due on that account under the *second* count of the *narr.* which declared for goods bargained and sold, and it seems immaterial to consider whether it could be recovered for under the third count or not. If the jury found on these counts at all, it was added to the general verdict. We cannot tell, and see no ground of complaint on account of that instruction.

The only remaining question is, whether the jury was sufficiently instructed as to damages in the plaintiff's first prayer? No specific rule for the assessment of damages is there declared, but it was left to the jury to find such damages as they might find from the evidence had been actually sustained. It does not appear in the record that objection was taken below to the prayer for infirmity in this respect. No prayer on the question of damages was offered by the defendants. It was certainly their privilege and duty to have asked for instruction as to the true measure of damages applicable to the case, and if any controlling rule exists for computing damages in such case, the Court, on application, would have laid it down as a guide to the jury. If the plaintiff's first prayer had simply concluded, after the words, "and that the plaintiff thereby suffered loss," with the words, "then they should find

for the plaintiff," without adding any thing else, the prayer would certainly have been unobjectionable. Yet, if the case had gone to the jury in that shape, they would have been without instruction as to any method of computation or measure to be observed; and the jury in such case would have the whole matter in their hands, and no ground of objection to the rulings would have existed. The only protection in such case against excessive damages, would be in the power of the Court to award a new trial, if in the Court's opinion the damages were excessive. Resort was had in this case to such motion, but the Court in the exercise of its discretion, refused the motion for a new trial. We do not see that the words which were added, and which certainly declare no rule for admeasurement of damages, put the case in any different attitude from what it would have occupied, if they had been omitted. They certainly could not mislead. In cases of contract, compensation for the injury occasioned by the breach is what the law aims to give by way of damages, and if a rule had been declared by which to measure it, the jury's verdict might have been the same. We do not know what elements went to make up their finding. Certain elements sometimes will not be allowed consideration in making up a verdict. If there were any such elements in this case, the appellants should have asked their exclusion. The Court was not so asked, nor was it asked to lay down any mode of ascertainment or rule for guidance. By common consent, the whole matter was left to the jury, it would seem, and it was not incumbent upon the Court, unasked, to fix a standard for the jury's regulation. We see no ground for reversal.

*Judgment affirmed.*

(Decided 10th March, 1886.)