ALEXANDER H. ROBERTSON, Trustee, and others *vs.* GEORGE R. MOWELL, Executor of EMMA M. MOW- ELL, and others.

*Evidence Act—Contract or Cause of Action—Test of Com- petency—Executor or Administrator as a Party to a Suit— Party to the Suit as a Witness—Equitable substitution— Question of Laches in Equity.*

The Evidence Act provides that, " When an original party to a con- tract or cause of action is dead, or shown to be lunatic or insane,. or when an executor or administrator is a party to the suit, action or other proceeding, either party may be called as a witness by his opponent, but shall not be admitted to testify on his own offer or upon the call of his co-plaintiff or co-defendant otherwise than now by law allowed, unless a nominal party merely." HELD:

That the terms "contract or cause of action," used in this clause of the statute, mean the contract or cause of action in issue and on trial, and the exception excludes only an original party to such contract who is also a party to the suit, from testifying where the other original party to the contract is dead or insane.

The test of competency is the contract or cause of action in issue and on trial, and not the fact to which the party is called to tes- tify.

The terms " or when an executor or administrator is a party to the suit, action or other proceeding," do not mean that the mere fact that the personal representative of any deceased person is a party to the suit, makes every other party on both sides incompetent to testify on his own offer or upon the call of his co-plaintiff or co- defendant.

The executor or administrator referred to is the executor or adminis- trator of a deceased party to the contract or cause of action in issue and on trial; and the exclusion only extends to the other party to such contract, and who is also a necessary, and not a mere nominal party to the suit.

Robertson, *et al. vs.* Mowell, *et al.*

Where a bill was filed by a trustee appointed by a Court of equity to carry out the trusts contained in a will, a co-complainant, who was not a party to the agreement or cause of action in issue and on trial, and had no interest whatever in such agreement at the time it was made, is competent to testify on her own offer or upon the call of her co-complainant.

The law of substitution is not founded on contract or agreement, but upon the equitable powers of the Court. It is in the nature of equitable relief to protect a meritorious creditor who has paid the debt of another, against loss and damage.

In most cases it is applied in behalf of one who is under an obligation of some kind to pay the debt of another; but it is not necessarily confined to these cases, it may be applied on equitable principles in behalf of one, who, at the instance and request of the debtor, pays a lien or incumbrance which he was under no legal obligation to pay, provided it does not interfere with intervening rights and incumbrances.

Where the question of laches arises in a Court of equity, each case should be determined according to its own facts.

APPEAL from the Circuit Court for Baltimore County, in Equity.

This appeal was taken from a decree dismissing the bill of complaint. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, and BRYAN, J.

*William L. Marbury*, and *Alexander H. Robertson*, for the appellants.

*Charles E. Hill*, and *William S. Keech*, for the appellees.

MILLER, J., delivered the opinion of the Court.

We do not agree with the learned Judge of the Court below in holding that Mrs. Hawkins is not a competent

witness in this case, and in our opinion she is competent, whether she be regarded as a nominal or a necessary party to the suit. The Evidence Act has removed all disqualification founded upon interest, and made the parties litigant competent and compellable to give evidence in all save a few well defined cases. One of these exceptions is that " when an original party to a contract or cause of action is dead, or shown to be lunatic or insane, or when an executor or administrator is a party to the suit, action or other proceeding, *either party* may be called as a witness by his opponent, but shall not be admitted to testify on his own offer or upon the call of his co-plaintiff or co-defendant otherwise than now by law allowed unless a nominal party merely."

This clause of the statute has been before us for construction in several cases. In *Wright vs. Gilbert,* 51 *Md.,* 157, it was held that the terms "contract or cause of action" as here used, mean the contract or cause of action in issue and on trial, and that the exception excludes only an original party to such contract, who is also a party to the suit, from testifying where the other original party to the contract is dead or insane. The sole purpose of the exception, say the Court in quoting the Massachusetts cases upon a similar provision in the statute of that State, is to exclude a party to the record from testifying in his own favor when the other party to the contract or cause of action in issue is incapable of testifying against him. The Court also refers with approval to the case of *Looker vs. Davis,* 47 *Missouri,* 140, where it was said that the object and purpose of the proviso undoubtedly was " to put the two parties to a suit upon terms of substantial equality in regard to the opportunity of giving testimony. The proposition may be taken as a general one, therefore, that where parties have contracted with each other, each may be supposed to have an equal knowledge of the transaction, and both, if living and sane, are allowed to

testify. But if one is precluded by death or insanity, the other is not entitled to the undue advantage of being a witness in his own case. But the test of competency is the contract or cause of action in issue and on trial, and not the fact to which the party is called to testify." So in the very recent case of *Horner & Condon vs. Frazier*, 65 *Md.*, 1, we have said, "the object of these Evidence Acts was to remove restrictions and not to impose them. Only such exceptions were made as seemed necessary to preserve *mutuality*, and to prevent undue advantage being given to a *survivor* in a contract where the other contractor was dead. It is only where the suit is upon the cause of action to which one party is dead, that the other party is excluded to preserve mutuality."

The other terms "or when an executor or administrator is a party to the suit, action or other proceeding," do not, in our opinion, mean that the mere fact that the personal representative *of any deceased person* is a party to the suit, makes every other party on both sides incompetent to testify on his own offer or upon the call of his co-plaintiff or co-defendant. If such a construction were to prevail it would render the Evidence Act of very little use in chancery suits, for in such cases the litigants are usually numerous, and it seldom happens, but that it becomes necessary to make the personal representatives of some one a party to the proceeding. It has never been held that the mere presence of any personal representative as a party to the action, works the broad disqualification of all the other parties contended for by the appellees, nor do we think the Legislature ever so intended. The executor or administrator referred to is, in our judgment, the executor or administrator of a deceased party to the contract or cause of action in issue and on trial; and the exclusion only extends to the other party to such contract, and who is also a necessary, and not a mere nominal party to the suit. And this, as it seems to us, is made more mani-

fest by the amendments which the Legislature has from
time to time, made to this proviso or exception, as em-
bodied in the original Act of 1864, ch. 109. By these
amendments commencing with the Act of 1868, ch. 116,
the exception is itself modified so that as it now stands,
under the Act of 1876, ch. 222, there follows immediately
after the words "unless a nominal party merely," this pro-
vision, "except in case where *the party* to such suit, action
or other proceeding, has died, or become lunatic or insane
after having testified in his own behalf, then the *opposite
party* shall be a competent witness on his own behalf in
such case, *notwithstanding the executor or administrator
of such deceased person,* or committee of such lunatic or
insane person, has become *a party* to such suit, action, or
other proceeding, but shall only testify as to matters upon
which such deceased lunatic or insane person was exam-
ined and testified to ; *provided* that when an executor or
administrator, guardian or committee of a lunatic or in-
sane person is a party to the suit, action or other proceed-
ing, when the *cause of action* has arisen on a contract made
with such executor, administrator, guardian or committee,
or out of transactions *between such executor, administra-
tor,* guardian or committee, and *the other party,* or when
the executor, administrator, guardian or committee testi-
fies as to any conversation had with the *other party, either
party* may be examined as a witness as provided for in the
other sections of this Article." All these provisions point
to the executor or administrator of an *original* party to
the contract or cause of action in issue and on trial, and
the Legislature seems to have been studious and pro-
lix, in its specifications in order not to allow the exception
to extend further than to exclude the *other party* to such
contract from testifying on his *own offer,* or at the call of
his co-suitor, when such executor or administrator is a
party to the suit, and the tenor of all the decisions upon
the subject is to the same effect. In none of them has it

ever been decided that the presence of *any* personal representative as a party would work the disqualification contended for in this case.   In the recent cases of *Dilley vs. Love,* 61 *Md.,* 603, and *Owens vs. Crow,* 62 *Md.,* 491, the executor and administrator of deceased parties whose estates were sought to be charged, were parties to the suits, and what was said in those cases must be taken as referring to the facts then before the Court, and they are entirely unlike those presented in this case.

Here the bill was filed by a trustee appointed by the Court to carry out the trusts contained in the will of Mrs. Ella V. Davis, and the witness, Mrs. Hawkins, who was the sister of Mrs. Davis, was joined with the trustee as complainant on account of some real or supposed interest in the trust property derived under that will.   These two sisters had an only surviving brother, Joseph W. Mowell, who was the owner of an estate called "Glencoe," upon which he had given a mortgage to Mr. Abell for $24,150, dated the 20th of October, 1876, and payable in five years. The bill alleges that Mrs. Davis, at the request of her said brother, paid to Mr. Abell on the 17th of January, 1881, the sum of $14,650 in part payment of this mortgage, and then charges, 1st, that at the time of this payment it was understood and agreed between Mrs. Davis, and her brother, that the balance due on the mortgage should be paid by the former, and that the mortgage should be duly assigned to her; 2nd, that it was further agreed between the same parties that the aforesaid sum of $14,650 should be a charge upon the property embraced in the mortgage; and 3rd, that, said parties intended and agreed that this sum should be secured to Mrs. Davis by her brother, and that for the purpose of carrying out this agreement Mrs. Davis visited her brother at Glencoe soon after the 17th of January, 1881, but found him too sick to transact any business, and she herself soon thereafter became sick and died on the 28th of February, 1881, leaving the will which

is exhibited with the bill.    When the bill was filed the parties mainly interested under this will were the five infant children of Mrs. Hawkins, George R. Mowell, a nephew, and Mrs. Sarah Barnes, a niece of the testatrix. The other statements of the bill (about which there is no dispute) are to the effect that the brother, Joseph W. Mowell, died on the 5th of December, 1881, leaving a will by which he devised all his property, including the "Glencoe" estate, to his wife Emma M. Mowell, with a request that she should devise one-third of it to his sister, Mrs. Hawkins, one-third to his nephew, George R. Mowell. and the other third between the children of Mrs. Hawkins and his niece Mrs. Sarah Barnes; such division, however, to be conditional upon the demeanor of these parties towards his wife; that Emma M. Mowell died in June, 1885, leaving a will, by which she devised the property in substantial compliance with her husband's request, giving, however, to George R. Mowell, whom she also appointed her executor, a part of the "Glencoe" estate, including the Mansion House, free from all the debts and liabilities of her deceased husband.    The prayer of the bill is for a decree declaring this sum of $14,650, with interest from the date of its payment, to be a charge and lien upon the property described in the Abell mortgage, and for general relief. The parties made defendants are George R. Mowell in his own right, and *as executor of Mrs. Emma M. Mowell,* the five children of Mrs. Hawkins, and Mrs. Barnes and her husband.    From this statement of the case it is clear that Mrs. Hawkins was not a party to the agreement or understanding between Mrs. Davis and her brother, if that is to be regarded as the contract or cause of action in issue and on trial, nor did she contribute any part of the money to make up this payment, for it is conceded that this was paid entirely by Mrs. Davis out of her own funds.    This witness had in fact no interest whatever in this agreement at the time it was made.    What she now has, if any,

is derived under her sister's will, and it is plain that all disqualification on the ground of interest has been removed by the statute. Nor is there any personal representative of either Mrs. Davis or Joseph W. Mowell a party to this suit, and the fact that *George R. Mowell as executor of Emma M. Mowell,* is a party, does not, according to the construction we have placed upon the Evidence Acts, render her incompetent to testify on her own offer or upon the call of her co-complainant.

With her testimony in the case, we have no hesitation in holding, that the averments of the bill in regard to the agreement and understanding between Mrs. Davis and her brother are substantially proved. It is said, however, that no specific or definite agreement is stated in the bill, or proved even by the testimony of Mrs. Hawkins, that the agreement, whatever it was, was not in writing, and that there was no such part performance by Mrs. Davis as to warrant a decree for specific execution. But assuming, for the sake of the argument, that this is true, still the testimony of this witness shows conclusively, that Mrs. Davis, kind, generous and affectionate as she was to her brother, never made or intended to make an absolute gift to him, of this large sum of money, and that he never supposed it to be a gift. There is, in fact, not a particle of admissible testimony from any witness in the case to prove that this was a gift, and that it was not a gift, is not only shown by the preponderance of proof, but is supported by the inference to be drawn from the character of the transaction itself, the relation in which the parties stood to each other, and the circumstances under which the payment was made. Neither of them had children. The brother was in bad health, had met with financial misfortune, was worried by the pressure of this heavy mortgage about to fall due, and was in danger of being turned out of house and home. The sister who was expecting to receive money from the redemption by the lessee of a ground rent she

held, determined to apply it for the relief of her brother, and did so when she received it. She paid the money directly to Mr. Abell, the mortgagee, if not by the express previous request of her brother, yet with his knowledge that she was going to do so, and his acquiescence therein, and with the *full understanding and agreement between them,* that when she had paid the whole mortgage debt, as she proposed to do, she *was to have the mortgage assigned to her as her security.* She intended to have the balance paid in the following spring or summer, but her sudden death prevented this from being done. Having paid the mortgage debt in part, under these circumstances and with this understanding and agreement, why may not the doctrine of substitution be applied as it was in the recent case of *Milholland vs. Tiffany,* 64 *Md.,* 455? It is true, she was under no legal obligation to make this payment, but under the circumstances stated she cannot be regarded as a mere stranger or volunteer officiously intermeddling with a matter which in no way concerned her. There are no intervening incumbrances or rights of creditors to be interfered with, nor any superior or equal equities to be displaced. In the case referred to the Court said : " The law of substitution is not founded on contract or agreement, but upon the equitable powers of the Court. It is in the nature of equitable relief to protect a *meritorious* creditor, who has paid the debt of another, against loss and damage." In most cases it is applied in behalf of one who is under an obligation of some kind to pay the debt of another, as a surety who is obliged to pay the debt of his principal, or one who is obliged to pay a lien or incumbrance on property purchased by him. "But," say the Court, " it is not necessarily confined to these cases, but may be applied on equitable principles in behalf of one, who at the instance and request of the debtor, pays a lien or incumbrance which he was under no legal obligation to pay, provided

it does not interfere with intervening rights and incumbrances." In our opinion, Mrs. Davis must be regarded as such meritorious creditor of her brother, to the extent of the payment on the mortgage debt thus made by her, and that this is a case which clearly falls within this equitable doctrine of substitution.

But the defence of *laches* is relied on, and this is the remaining question to be considered. The bill was filed on the 4th of September, 1885, more than four years after the death of Mrs. Davis, but less than that period after the death of her brother, and within three months after the death of his widow. Authorities upon the subject of *laches* and lapse of time are almost innumerable, but the Courts have wisely abstained from attempting to lay down any general or inflexible rule to govern all cases. As was said in *Glenn vs. Hebb,* 17 *Md.,* 260, when questions of this kind arise in Courts of equity, it is a sound maxim that each case is to be determined according to its own facts. And this must be, for it is obvious that while it would be just and equitable to sustain such a defence in one case, and under one state of circumstances, it would work gross wrong and injustice to sustain it in another where the circumstances are entirely different. In the present case Mr. Keech, the executor of Mrs. Davis, might perhaps have asserted the claim, but it seems he settled up her personal estate in the Orphans' Court without doing so, and it is but justice to him to say that he has stated in argument that he had no knowledge whatever of the facts upon which the claim is founded. It is also true that Mr. Stewart, the trustee first appointed by the Court, in the place of the trustee named in the will of Mrs. Davis, and who declined to act, might have filed a bill to enforce the claim, but there is nothing to show that during his administration of the trust, he had knowledge of the facts. And who are the parties beneficially interested? They

are devisees both under the will of Mrs. Davis and the will of her brother as carried out by that of his widow. Those most interested in asserting the claim, and whose interests would be most detrimentally affected by sustaining this defence are the *infant children* of Mrs. Hawkins. It is very doubtful, to say the least, whether Mrs. Hawkins herself would be benefited by having the claim allowed, and we do not think that under the circumstances, *laches* should be imputed to her infant children. But more than this, the testimony shows that Mrs. Davis intended when she made this payment, and made arrangements to pay the balance, and take an assignment of the mortgage, and thus get control of the "Glencoe" estate, to allow her brother to have it as a home "free of any expense" during his life. She also declared that his wife should "always have a home there; that she would not put her out; that she had been a faithful wife to him." . In her will she expresses her desire to accomplish everything for the ease and comfort of her dear brother who had lost his health, "as well as to give a competence to his devoted wife who has so kindly nursed him during his many years of pain and suffering." We are therefore satisfied that if Mrs. Davis were now alive, holding an assignment of this mortgage, she would not have enforced it until after the death of her brother's widow, or have exacted interest thereon from her, and that this bill has been filed quite as soon as she would have enforced her mortgage. After a careful consideration of the subject we are of opinion that in this case the defence of *laches* cannot be sustained. But while we so decide we are further of opinion that interest on the claim can only be allowed from the death of the brother's widow, and we rest our decision of this point upon what we have already said in regard to the intentions and wishes of Mrs. Davis.

It follows that the decree dismissing the bill must be reversed, and the cause remanded in order that a decree

may be passed, and further proceedings had, in conformity with the views expressed in this opinion.

*Decree reversed, and*

*cause remanded.*

(Decided 4th February, 1887.)