# LEE W. WARREN

## *vs.*

## GUY R. AYRES.

*Fourth section of the Statute of Frauds: year clause; construc-
tion; intention of parties; evidence; col-
lateral contracts.*

To bring a case within the year clause of the fourth section
of the Statute of Frauds, it must be shown by a fair and reason-
able interpretation of the terms of the agreement, in view of
the circumstances under which it was made, that it was the
intention and understanding of the parties that it should not be
performed within a year.                              p. 557

But the statute will not apply where the contract can, by any
possibility, be fulfilled or completed within the space of a year,
although the parties may have intended that its operation should
extend through a much longer period.               p. 557

Full performance by one of the parties within the year will
take the case out of the statute.                    p. 557

In determining whether it was the intention of the parties
that a verbal contract or agreement was not to be performed
within a year, consideration may be made of the provisions
contained in a written contract between those parties and

others, if performance of the terms and conditions of the written contract constitute the consideration of the aforementioned verbal agreement.                                                    p. 557

*Decided June 23rd, 1915.*

Appeal from the Circuit Court for Worcester County. (JONES, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John W. Staton* (with whom was *Calvin B. Taylor* on the brief), for the appellant.

*George M. Upshur* (with whom was *Franklin Upshur* on the brief), for the appellee.

PATTISON, J., delivered the opinion of the Court.

The declaration in this case was demurred to and the demurrer being sustained, a judgment was entered for the defendant. It is from that judgment that the appeal is taken.

The facts as alleged in the declaration are substantially as follows:

There existed in December, 1910, a corporation known as the Tilghman Cypress Company, organized under the laws of the State of Florida, its principal office being at Lukens, Levy County, Florida, and the capital stock of said company consisted of one hundred shares, each of the par value of $1,000, and at such time was held as follows:

Hoban-Hunter Feitner Co., of the State of
  New York .........................30 shares
William J. Staton........................10 shares
Guy R. Ayres, the defendant..............15 shares
Lee W. Warren, the plaintiff.............35 shares
Georgia Warren, wife of the plaintiff.......10 shares

The plaintiff was the Secretary, Treasurer and General
Manager of said company, while the defendant was its time-
keeper and clerk.

The plaintiff, being a resident of the State of Maryland,
wished to dispose of his stock, sever his relations with the
company and return to Maryland, and in an attempt to carry
out such desire, he entered into negotiations with the Hoban-
Hunter-Feitner Company to sell to it not only his shares of
stock of the company, but also the stock of the company held
by Staton, Ayres and his wife, amounting in all to seventy
shares.   It seems, however, that said company did not wish
the plaintiff to sever his relations with the Tilghman Cypress
Company, and so declined to purchase the entire seventy
shares aforesaid, but proposed to the plaintiff that "if he
would personally retain twenty shares of the stock of the
Tilghman Cypress Company and agree to remain with the
company two years as Secretary, Treasurer and General Man-
ager of the said Tilghman Cypress Company, that the said
Hoban-Hunter-Feitner Company, in consideration thereof,
would purchase fifty shares of the capital stock of the Tilgh-
man Cypress Company at and for the sum of $2,000 per
share."

This proposition was submitted to the other holders of the
stock, all of whom wished to dispose of their holdings in
said company, and it was agreed between them that the
proposition should be accepted and that the fifty shares of
the stock of the Tilghman Cypress Company be sold to the
Hoban-Hunter-Feitner Company.   The fifty shares to be dis-
posed of were made up of Stanton's ten shares, Ayres' fifteen

shares, the ten shares of the plaintiff's wife, and fifteen shares of the plaintiff, leaving him twenty shares undisposed of.

A written agreement embracing the terms and conditions of the aforesaid proposition was executed by the above named parties and the Hoban-Hunter-Feitner Company on the 31st day of December, 1910, by which the aforesaid fifty shares of stock were sold to said company at and for the aforesaid sum of $2,000 per share. By the provisions of this agreement the Hoban-Hunter-Feitner Company was not to receive said shares of stock until January 1st, 1913, and it was provided in the agreement that for the two intervening years, 1911 and 1912, stated dividends upon said stock were to be paid to the holders of such stock at the time of the execution of the agreement, and that upon the receipt of the stock by the Hoban-Hunter-Feitner Compaany, on January 1st, 1913, it was to pay to the respective vendors twenty-five per cent. of the purchase price of said stock in cash, and to secure the payment of the balance of said purchase money the aforesaid company was to give its interest bearing notes, payable in six, twelve and eighteen months thereafter, each for twenty-five per cent. of such purchase price, and when given they were to be secured by an assignment of the stock to the respective parties from whom it was purchased, as security for the payment of said notes. And it was further provided in the agreement "that in the event default is made in the payment of any or either of the notes given, that all of the outstanding notes shall immediately become due and · payable." The agreement contained the further provision "that in the event the property and assets of the Tilghman Cypress Company shall become depreciated by means of storms, floods, fires, or providential causes, to the extent that the value of said shares which is hereby agreed to be two thousand ($2,000) dollars per share, shall become less than this value, that the parties of the first part shall be paid for the said stock sold to the party of the second part, (the Hoban-Hunter-Feitner Company) at such reduced price, if caused by storms, floods, fires, or providential causes." And the agreement concludes with

the provisions that "It is hereby mutually understood and agreed, that during the life of this agreement, and until default therein by said second party, the said L. W. Warren (the plaintiff) shall be and remain the Secretary, Treasurer and General Manager of the said Tilghman Cypress Company, as at present."

As the plaintiff, under the proposition made to him, was to retain twenty of his thirty-five shares of the Tilghman Cypress Company, the offer afforded him an opportunity to sell only fifteen shares of his entire stock, while such offer afforded an opportunity to the other named stockholders to sell their entire holdings at the price offered, which the declaration alleges was to their great interest and advantage, and as the plaintiff was not proportionately benefited with the others in the sale of said stock and as he, in addition thereto, was required to assume burdens that he did not wish to assume in order to make such advantageous sale, it was verbally agreed between the plaintiff and the defendant, Staton and plaintiff's wife, at the time of the acceptance of said proposition and before the execution of said written agreement, that in consideration of the benefits and advantages accruing to them by reason of such sale, in which advantages, as we have said, the plaintiff did not share proportionately with them, that the plaintiff, upon the sale of his fifteen shares of stock and upon assuming the burdens or responsibilities placed upon him by the acceptance of the aforesaid proposition and the execution of an agreement in accordance therewith, should have the right "as soon as or whenever he could arrange with the Hoban-Hunter-Feitner Company to do so, to sever his connection with the Tilghman Cypress Company and to sell his remaining twenty shares of stock in said Tilghman Cypress Company at any price not less than par, and the said defendant and also the said Georgia Warren and the said William J. Staton would, when the amount could be ascertained and determined, refund to the said plaintiff such sums of money respectively as would equalize the price

received by the plaintiff for the defendant and the said Georgia Warren and the said William J. Staton from their respective parts of said sale of said fifty shares to said Hoban-Hunter-Feitner Company at two thousand ($2,000) dollars per share, so that each of said stockholders when said sale should have been consummated and the purchase price fully paid would receive an equal price per share for his or her entire holdings of said stock;" and the declaration alleges that the plaintiff was induced by said agreement, containing the promise therein made, to accept said proposition and to execute with the defendant and other named stockholders the aforesaid written agreement.

It is further alleged in the declaration that the plaintiff, after serving the company as its secretary, treasurer and general manager for the term of two years, as required by the aforesaid agreement, on the 7th day of January, 1913, "again relying on and induced thereto by the promise aforesaid of the defendant, and of the said Georgia Warren and William J. Staton, sold his remaining shares of stock in said Tilghman Cypress Company to said Hoban-Hunter-Feitner Company at and for the sum of twelve hundred and fifty dollars a share, being the best price that he could obtain therefor; and on or about the first day of July, 1914, the said Hoban-Hunter-Feitner Company made its final payment for the purchase price of the said fifty shares of stock bought by them from the plaintiff at two thousand dollars a share, and the plaintiff has demanded of the defendant that the said defendant pay to the plaintiff the sum of money necessary to equalize the price of said shares of stock as hereinbefore fully set out, in accordance with the promise of the defendant as aforesaid (naming the amount); but although the plaintiff has fully complied with the terms of said agreement on his part and the said William J. Staton and the said Georgia Warren have fully complied with the terms of said agreement on their part, the said defendant has failed and refused to do so."

The ground of the demurrer is that the aforesaid verbal agreement between the plaintiff and defendant and the other named stockholders falls within Section 4 of the Statute of Frauds, which requires all contracts not in writing "to be performed within the space of one year from the making thereof."

To bring a case within the year clause of the 4th Section of the statute it must be shown by a fair and reasonable interpretation of the terms of the agreement, in view of the circumstances under which it was made, that it was the intention and understanding of the parties that it should not be performed within a year. *Horner & Condon, Ex'rs.,* v. *Frazier,* 65 Md. 12. This construction has been unqualifiedly adopted in this State. And the statute will not apply where the contract can, by any possibility, be fulfilled or completed in the space of a year, although the parties may have intended that its operation should extend through a much longer period. It is also the settled law of this State that a full performance by one of the parties within the year will take the case out of the Statute. *Horner & Condon, Ex'rs.,* v. *Frazier, supra; Ellicott* v. *Peterson's Ex'rs.,* 4 Md. 476.

And in ascertaining whether it was the intention of the parties that the verbal contract or agreement was not to be performed within a year, it becomes necessary for us to consider, in connection with it, the provisions contained in the written contract between the plaintiff, defendant and others and the said Hoban-Hunter-Feitner Company, inasmuch as its execution by the plaintiff and the performance by him of the terms and conditions therein imposed upon him constitutes the consideration of the aforesaid verbal agreement.

It was upon the performance of the duties and obligations placed upon the plaintiff by such written contract that the benefits and advantages accruing thereunder to the defendant largely depended. The plaintiff was not only to be content with the sale of fifteen of his thirty five shares, but was also to continue in the service of the Tilghman Cypress Company as its Secretary, Treasurer and General Manager, for two

years at least after the making of the contract, and it was not until then that the defendant was to receive the benefits and advantages accruing to him thereunder, for until then the stock of the defendant was not to be transferred to the Hoban-Hunter-Feitner Company and the purchase money therefor paid or secured to the defendant; and not until the expiration of two years would it be positively known what the defendant would receive for his stock, for under the provisions of the written agreement the amount to be received for it was subject to reduction by injury to the property of the company, caused by storms, floods, fires or providential causes.

Thus it will be seen that we must look largely to the written contract to ascertain the intention of the parties to the verbal agreement as to when the duties and obligations assumed therein by the respective parties thereto were to be performed.

The verbal agreement is to the effect that the plaintiff should have the right as soon as or whenever he could arrange with the said Hoban-Hunter-Feitner Company to do so, to sever his connection with the said Tilghman Cypress Company and to sell his remaining twenty shares of stock in the Tilghman Cypress Company at a price not less than par, and the defendant with the others named would "when the amount could be ascertained and determined, refund to said plaintiff such sums of money respectively as would equalize the price" per share received by each and all of them for their entire holdings.

It is clear from the verbal agreement that the defendant and the others named with him were not to perform, and in fact could not have performed, their part of the verbal agreement—that is, to refund to him such sums of money as would be necessary to equalize the price per share received by each and all of them for their entire holdings—within one year from the making of such verbal agreement, for the amount so refunded was to be paid from the sums received by them from the sale of their stock, and no part of this was to be received by them earlier than two years from the making of the writ-

ten contract, which was subsequent to the verbal contract. In fact, as we have stated, the amount that they were to receive would not be positively known for at least two years after the making of the written contract, for the price to be received by the defendant for his stock was subject to be diminished, as we have said, by injury to the property and assets of the Tilghman Cypress Company by storms, floods, fires, or providential causes. And as the verbal agreement could not have been performed by the defendant within one year, the agreement falls within the statute, unless the plaintiff, within one year from the making of it, had fully performed his part of such contract or agreement, and this he had not done.

It is true he executed the contract with the Hoban-Hunter-Feitner Company, but this was not all that he was to do; he was to remain with the company as its Secretary, Treasurer and General Manager for the time named in the written contract, which of necessity was more than one year from the making of it, unless his connection therewith was earlier severed by arrangements made with the last named company, at which time he could sell his remaining twenty shares of stock at a price not less than par. But he did not sever his relations and did not sell his stock within the term of one year, and hence did not fully perform his part of the contract within one year from the making of the contract.

It follows from what we have said that the Court committed no error in its ruling upon the demurrer, and the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*