ALLIED AMERICAN MUTUAL FIRE INSURANCE
COMPANY *v.* LOVEMAN

[No. 151, September Term, 1957.]

*Decided March 5, 1958.*

*Motion for modification of opinion as to costs only filed by appellee April 3, 1958, denied April 25, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*W. Lee Harrison,* with whom was *Robert E. Cahill* on the brief, for the appellant.

*Allan H. Fisher, Jr.,* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Insurance manuals reveal that Allied American Mutual Fire Insurance Company is one of the very few large writers of casualty insurance that has not shown an underwriting loss in any of the last few years. A hint of why may appear in the appeal before us.

In an effort, as subrogee, to collect $425.00 paid to an insured, Allied sued twice, in different jurisdictions, and has appealed to this Court to reverse the judgment against it rendered by the Circuit Court for Baltimore County in the Maryland suit.

Allied indemnified Loveman against loss from damage to his motor vehicle less the first $50.00 of such loss—that is to say, it issued to him its fifty dollar deductible policy. In September, 1951, Loveman's car was struck by a car owned and driven by one Memler. Loveman and Allied haggled for nine months over the amount of the damage, agreed on $475.00—the receipted repair bill was $437.04—and Allied paid him $425.00, on the strength of his statement in the proof of loss he signed and swore to that Allied was subrogated to his rights of recovery against any person to the extent of the payment made. (This statement was declaratory of Allied's rights as an indemnitor who had paid a loss under its liability insurance contract. *2 Richards, Insurance* (5th ed.), Sec. 184). Before the payment—indeed eighteen days after the accident—Loveman, through his lawyer Horowitz, had filed suit in the District of Columbia against Memler, claiming damage for injuries not only to his person but to his car and for the loss of its use. Eight months later, in June, 1952, Loveman received a letter from Allied's Washington lawyers, enclosing subrogation forms and saying they would endeavor to collect "the entire amount of the loss that was sustained by Allied * * * and by you * * *" at a fee of 25% of the amount recovered, and asking advices as to

"any additional items of damage which should be included in any suit filed on your behalf." Loveman says he wrote them back after a long delay, sending the forms and telling them he understood that since their letter they had "been in touch with my attorney, Mr. Horowitz, and received all information from him." Loveman says he wrote further that he understood Horowitz had withdrawn the claim for property damage in the pending suit and added "I have a claim for $385.00 * * * which I paid for rental of a car while my car was disabled, together with $35 for taxicabs and other transportation. In addition the frame is still out of line and other damage to the car is still unrepaired to my damage in the amount of $450—which should be added to your claim."

Apparently Loveman thereafter had no communication with or knowledge of those lawyers or of what they had done. On January 8, 1954, Horowitz filed a pretrial statement in Loveman's suit against Memler, alleging and claiming damages to the automobile of $437.04 (the amount of the receipted bill) as well as $400.00 for loss of use of the vehicle. Two weeks later, settlement in the amount of $5,500.00 was agreed to, and Loveman signed a release, acknowledging under oath "that he fully understands its contents * * *." In the release Loveman discharged Memler and all others responsible for "injuries to the person and property of the Undersigned, and the treatment thereof, and the consequences flowing therefrom * * *." Horowitz deducted his fee of $1,600.00 and sent Loveman a check for $3,900.00 but stopped payment on the check before it was cashed. This was done to enable Horowitz to retain $900.00 to pay the doctor who had treated Loveman, and Allied. Loveman reluctantly signed a paper agreeing to leave with Horowitz the money for those payments and got his $3,000.00. Then he immediately retained another lawyer to compel Horowitz to pay over the $900.00. Finally, it was agreed that the doctor should be paid but that Allied's $425.00 should be turned over to Loveman. Not only is Loveman's persistence explained by a sentence of his testimony but that sentence also shows the feelings that have led to, and supported, as a defense, a rationalization of his belief that he was being imposed on by being asked to pay

Allied. He testified he did not owe the $425.00 "because it was up to Allied to get that from Memler, and I had paid a premium on my policy and was entitled to that money and shouldn't have to pay it back."

In February, 1954, a month after the settlement, Allied sued Horowitz in Washington for its $425.00, alleging he had been put on notice of its interest in the suit and had promised to protect that interest. In August, 1954, Allied sued Loveman in the case before us, and in May, 1955, dismissed the suit against Horowitz with prejudice.

No question is raised as to the propriety of the form of action or as to the amount of recovery if Allied is entitled to recover.[1] *Res judicata* was discussed in chambers with the trial judge, but at the trial, appellee's counsel specifically repudiated its applicability on the facts of the case and in his brief it is not so much as mentioned. Loveman's theory was and is that Allied led him to believe its lawyers would collect the $425.00, that in reliance on this he did not seek to do so, abandoned such a claim in his suit, made a settlement which he believed did not reflect property damage, and therefore Allied is estopped to collect the $425.00 from him. The evidence that suit was first filed against Horowitz rather than Loveman was offered, and is relied on, as corroborative of the fact that Allied was itself to collect its $425.00 and had arranged to do so through Horowitz in a deal of which Loveman had no knowledge and with which he was not concerned. The trial court adopted all of Loveman's reasoning, including that as to the significance of the suit against Horowitz as part of the evidence of estoppel. Allied assails and Loveman defends estoppel here, and the parties and the Court have made it the only issue to be decided.

We think there is lacking both factual and legal support for a finding of estoppel. Loveman has been a practicing lawyer for over twenty years. Presumably he knew that as a practical matter it was customary and desirable and, as a legal

---

1. *Richards, op. cit., supra,* Sec. 198 at 684, says: "Generally an insurer upon payment of loss is privileged to reimburse itself from funds received by the insured from the tortfeasor if the insured recovers more than the total of his loss."

matter, generally necessary to include both personal and property damage claims in one suit, or else lose the right to collect one or the other. *Packham v. German Fire Ins. Co.,* 91 Md. 515, 526-527. He corresponded once with Allied's Washington lawyers in 1952 and knew they had been informed of his pending suit and its details. Horowitz' inclusion of the items of $437.04 for car repair and $400.00 for loss of use in the pretrial statement of January, 1954, make Loveman's claim that he had told Horowitz to withdraw all claims for property damage and that he understood that he had done so, difficult to accept. A most significant, if not decisive, reason is that two weeks later, Loveman accepted a settlement based on and including the amounts claimed for property damage and signed a release of all claims "for injuries to the * * * property of the Undersigned, and * * * the consequences flowing therefrom * * *." He cannot now be heard to say that he did not continue to sue for, claim and collect his property damages.

Significant in another way is the execution of the release. Loveman's theory is that when he signed it, it was on the assumption that Allied had collected, or would collect, from Memler. Nothing shown by the record gave him any right to think Allied had already collected and if it had not, Loveman's release of Memler for property damage would have barred its right to recover. *Packham v. German Fire Ins. Co., supra; Noma Electric Corp. v. Fidelity & Deposit Co.,* 201 Md. 407, 410. That Loveman had such a purpose, or an indifference to that result, is scarcely credible. Furthermore, under Loveman's theory he would not only have barred Allied from the recovery of its $425.00, but would have released his own uncollected claims—which he says he had taken from Horowitz and entrusted to Allied's lawyers—for the $50.00 deducted and for the $400.00 rent he had paid from his own pocket for another car while his was disabled. We find nothing to support a finding he would have thus wiped out his right to collect his out-of-pocket expenses of almost $450.00.

What we have said makes it plain why we think there are lacking essentials of estoppel. Loveman did not do what he

would not have done or fail to do what he would have done nor change his position for the worse and suffer detriment because of Allied. He sued for property damage and loss of use, he continued to claim reimbursement for property damage and loss of use and he collected for both. The amount he collected for property damage—or $425.00 of it—belonged to Allied. If it did not, Allied's payment to him of $425.00 would not have been the indemnity that made him whole, as it was, but an unconditional payment that it was not.

We think that Loveman is not entitled to retain $425.00 of the money he collected from Memler and must pay it to Allied. Since there is no question as to the amount due, we shall enter judgment for Allied under Maryland Rule 875 a.

> *Judgment reversed, with costs; judgment for $425.00 entered in favor of appellant against appellee.*