KINGS POINT HOMES, INC., ET AL. *v.*
DORCON SERVICES, LIMITED

[No. 285, September Term, 1968.]

*Decided June 2, 1969.*

*Motion for rehearing filed June 18, 1969; denied June 23, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Kenneth E. Pruden,* with whom was *George T. Burroughs* on the brief, for appellants.

*Carl A. Durkee* for appellee.

MARBURY, J., delivered the opinion of the Court.

On November 17, 1967, the appellee Dorcon Services, Limited (Dorcon) filed suit in the Circuit Court for Prince George's County to foreclose a mechanics' lien against the appellants Kings Point Homes, Inc. (Kings Point), et al. Kings Point counterclaimed against Dorcon for alleged overpayment to the lien claimant and also filed a third party claim against Harold E. Dorsey, Dor-

con's general superintendent, for the sum of $1,720.07 evidenced by a promissory note. The lien claims arose out of work performed in the construction of a group of houses referred to as the "Boxwood Village" job, Greenbelt, Maryland. Subsequent to the filing of the lien and petition to foreclose, and by consent, the lien claims were bonded off by the filing of a bond of the appellant Transamerica Insurance Company pursuant to Maryland Rule BG75 b. After a hearing, the lower court entered a judgment for $11,104.93 for Dorcon against Kings Point, and granted a judgment for Kings Point against Harold E. Dorsey in the amount of $1,720.07.

The account attached to Dorcon's lien claim asserted a total of $18,105.00 owing to Dorcon for work done and materials furnished in performance of the construction of forty-six brick fronts at the rate of $330.00 each, totaling $15,180.00; and for thirteen fireplaces at the rate of $675.00 each, totaling $8,775.00 less $450.00 each, or $5,850.00 which had been previously paid on the fireplaces. Thus Dorcon claimed $15,180.00 for brick fronts and a balance of $2,925.00 for fireplaces, for a total of $18,105.00. The appellants produced written releases for sixteen of the brick fronts.

In the fall of 1965, Dorcon and Kings Point, who had done business with each other on previous occasions, entered into an agreement with respect to the construction of homes in Greenbelt, Maryland. In November 1966, Dorcon temporarily suspended its work on the job and negotiations as to the amount owed by Kings Point ensued. By February 1967, Dorcon had outstanding bills amounting to over $12,000.00 and Kings Point agreed to satisfy Dorcon's creditors. In return for such satisfaction, the appellee agreed to compromise the amounts owed to it by Kings Point. Dorcon's creditors were paid and in addition Kings Point advanced the sum of $3,440.14 to Dorcon. Kings Point took a promissory note from Harold E. Dorsey individually in the amount of $1,720.07. According to the evidence the remaining $1,720.07 would be charged off to Dorcon when it finished the job. The

lower court concluded that these actions of the parties constituted an accord and satisfaction.

As part of its work on Boxwood Village the appellee constructed fireplaces in various houses evidently at the purchasers' option at the rate of $675.00 per fireplace. However, as the work progressed the price of each fireplace was renegotiated to $450.00. Dorcon's evidence indicated that it agreed to the lower price only upon the condition that each of the remaining twenty-two houses would have a fireplace. Dorcon claimed that it was not allowed to construct more than thirteen of the agreed twenty-two fireplaces, and thus it subsequently billed Kings Point $225.00 more for each of the thirteen fireplaces since $675.00 per fireplace was its understanding prior to the new agreement. The lower court allowed Dorcon recovery in the amount of $11,104.93. This amount may be broken down as follows:

$ 9,900.00 (30 brick fronts at $330.00)
plus
2,925.00 (13 fireplaces at $225.00)
$12,825.00
minus
1,720.07 advanced by Kings Point to Dorcon
$11,104.93

Kings Point and Transamerica Insurance Company, but not Dorsey, have appealed to this Court. On appeal three questions are presented:

1. Did the court below err in allowing appellee $9,900.00 for brick fronts which were a contract item?

2. Did the court below err in allowing an additional bill of $225.00 per fireplace after the fireplaces had been previously billed and paid for?

3. Did the court below err in the matter in which judgment was rendered on the overpayment made to appellee?

This Court answers all three questions in the negative and the lower court's decision must be affirmed.

As to the first question, the appellants maintain that the brick fronts were included in a written contract and that the accord and satisfaction which occurred between the parties in February 1967 satisfied any money previously due and owing Dorcon. The trial court, however, did not find that there was a written contract, but that the parties had entered into an "oral agreement." The record discloses that the writing that the appellants seek to raise to the dignity of a contract was described by Mr. Dorsey as merely a notation of prices and a bid. Further the trial court found that the accord and satisfaction reached between the parties was with respect to the bills rendered to Kings Point up to that time only and that the agreement did not include any future work to be done and amounts owing for the brick fronts which the appellee had completed but for which it had not yet billed Kings Point.

Mr. Dorsey testified that one of Kings Point's agents asked him not to bill them for the brick fronts until later in the course of the transaction between the companies. That portion of his testimony is as follows:

"Q. Was there any special or unusual agreement about the bid for the brick fronts?

A. In our initial negotiation there was nothing unusual but several weeks later Mr. Poland came to me, asked me—this was when I first started to build the job, asking me about carrying some portion of the job, asked me to withhold billing the brick fronts if I could possibly do so. I told him I couldn't answer at the time, but if I could carry the job to that extent I would be glad to do so.

Q. So when were you supposed to [bill] them?

A. It was understood that the job was going to progress completely and fully to the extent of all of the houses being constructed and I was to

bill them only after the job was completed or thereabouts."

Another of Kings Point's agents, Mrs. Murphy, admitted that they paid Dorcon separately for brick fronts on the jobs in Virginia and Randallstown. He also acknowledged that on February 2, 1967, at the time of the accord and satisfaction, he wrote:

"Exception is hereby taken to the paragraph referring to lien rights inasmuch as our lien rights shall still exist for future work not billed for and past work that may have been billed but disallowed for incompletion etc. on past work never billed

Any future work done will be billed at the rate of and paid for as per previous agreement"

In light of the above evidence this Court cannot say that the trial court was clearly erroneous in finding that the accord and satisfaction excepted billing for the complete brick fronts and in allowing the appellee to recover for their work and materials in connection with these brick fronts. Rule 886 a.

Secondly, the appellants urge that the lower court erred in allowing the billing of an additional $2,925.00 for fireplaces. Prior to the accord and satisfaction dated February 2, 1967, Dorcon had been constructing fireplaces apparently at the buyer's option for Kings Point at $675.-00 per fireplace. By mutual consent, the parties renegotiated the price per unit to $450.00. However, Dorcon insisted that Kings Point guarantee that fireplaces would be installed in the remaining twenty-two houses. After Dorcon had built thirteen fireplaces the appellants told it not to install any more fireplaces unless specifically instructed. Dorcon felt that these orders constituted a breach of the modification. Mr. Dorsey related his conversation with one of Kings Point's representatives:

"At this point after all the bases had been built, all the footings had been poured and I

agreed in a meeting with Mr. Schwartz I would not bill any more fireplaces but that I would re- bill the fireplaces at the original price. This was done in the office trailer on the job in Greenbelt.

"Q. Mr. Schwartz assented to that? A. Mr. Schwartz at first denied having made the agreement that all of the 23 houses would receive a fireplace with no exceptions. I said Mr. Schwartz, you must remember, because you made the deal with me, and he did agree that he did."

Appellants urge that since the appellees' claim arose prior to February 2, 1967, that the accord and satisfaction extinguished Dorcon's claim. However, since the rebilling did not occur until after that date, the lower court apparently found that the money owing on the fireplaces was not included in the accord and satisfaction under the clause excepting "past work never billed." We cannot say that the lower court's determination was clearly erroneous.

Lastly, the appellants urge that the trial court erred in not setting off the whole $3,440.14 advanced under the February 2 agreement and referred to by the appellants as an "overpayment" from the amount of the judgment rendered against Kings Point. The lower court found that Kings Point "in consideration of the $3,440.14 took back a promissory note from Harold E. Dorsey, individually, in the amount of $1,720.07 . . . ." Consideration for the remaining $1,720.07 was to be Dorcon's finishing the job. We cannot say that the lower court erred in entering judgment against Dorsey individually for $1,720.07, and reducing the judgment against Kings Point by a like amount.

Finding no reversible error in the decisions of the trial court, the judgment must be affirmed.

*Judgment affirmed, costs to be paid by the appellants.*