NOMA ELECTRIC CORPORATION *v.* FIDELITY
& DEPOSIT COMPANY OF MARYLAND

[No. 59, October Term, 1952.]

*Decided February 5, 1953.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*William D. Sutton,* with whom were *Richard F. Cleveland, Lee W. Eckels, Semmes, Bowen & Semmes* and *Thorp, Reed & Armstrong* on the brief, for the appellant.

*Hilary W. Gans* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment rendered by the court sitting without a jury in a case arising out of certain "primary commercial blanket bonds" issued by the appellee to the appellant's predecessor corporation, Triumph Explosives, Inc., under which the appellee agreed to indemnify the insured against all losses up to $50,000 incurred by it as the result of the dishonesty of the insured's employees. The bonds covered the period from January 1, 1941, through December 31, 1942. Suit was filed in 1950. One of the numerous defenses set up by the appellee was that by entering into a settlement with one of the defalcating employees, under which he was released upon the payment of a certain sum, the surety was released.

There is very little dispute as to the facts. Gustav H. Kann, president of Triumph, and Joseph Ben Decker, its executive vice-president, pursuant to a conspiracy between them and other employees, fraudulently and without authority from the board of directors, drew large sums from the corporate funds and bank accounts during the period covered by the bonds. The plaintiff made a tentative claim for loss under the bonds on September

23, 1943, amounting to over $314,000. At that time the plaintiff requested an extension of time for filing claim and bringing suit, and suggested that it be allowed to negotiate for settlement. On October 2, 1943, the defendant agreed to an extension of the time for filing claim but stated, in regard to the proposed negotiations for recovery: "Our general information is Mr. Gustav H. Kann's financial standing is such that he can absorb the entire alleged loss. We know nothing about Mr. Decker's financial standing, but you have in mind of course that whatever negotiations you might have with either or both of them should not affect our Company's rights over and against either or both of them."

On August 31, 1945, without the knowledge or consent of the defendant, the plaintiff made a settlement with Kann, whereby, upon the payment by him of $65,000, it released him from all liability. In May, 1949, without the knowledge or consent of the defendant, it made a settlement with Decker's widow (he having died) of all claims against her for property allegedly transferred to her by Decker, for $35,000. It then obtained, without opposition, a judgment against his estate for a sum amounting to about $400,000. As the estate is without assets, it appears that no part of this judgment is now collectible.

It is clear that Kann and Decker were jointly and severally liable for the defalcations. *Cf. Western Maryland Dairy v. Chenowith*, 180 Md. 236, 243, 23 A. 2d 660, and *Etgen v. Washington Co. B. & L. Association*, 184 Md. 412, 418, 41 A. 2d 290. The release to Kann had the effect of destroying the subrogation rights of the insurer against Kann for the whole amount claimed. The appellant does not deny that this was the effect of its release, and that if only a single tortfeasor were involved, it would be a good defense to the action. *Packham v. German Fire Insurance Co.*, 91 Md. 515, 46 A. 1066, 50 L. R. A. 828; *Railway Co. v. Assurance Corp.*, 163 Md. 97, 161 A. 5; *Harter v. American Eagle Fire Insurance Co.*, 6 Cir., 60 F. 2d 245; *Aetna Casualty & Surety*

*Co. v. Phoenix National Bank & Trust Co.,* 285 U. S. 209, 52 S. Ct. 329, 76 L. Ed. 709; 6 *Appleman, Insurance,* § 4093; 5 *Joyce, Insurance* (2nd ed.) § 3544a. But it contends that this is altered by the provisions of Article 50, Section 23, of the Code of 1951, which provides that "a release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides * * *." The release in the instant case expressly reserves the right against Decker. We find nothing in this statute dealing specifically with rights of subrogation; the statute merely deals with rights of contribution. It has been held that the release of one tortfeasor, which impairs the right of contribution of another, operates to discharge the insurer of the second tortfeasor. *American Automobile Insurance Co. v. Mack,* D. C. Ky., 34 F. S. 224, 226.

Of course, the release of Kann did not release Decker, or the insurer's subrogation rights against him. But the insurer complains of the loss of its rights against Kann, who it claims was fully able to pay the loss, whereas Decker's estate is hopelessly insolvent. The appellant relies upon *McShane v. Howard Bank,* 73 Md. 135, 20 A. 776, 10 L. R. A. 552. In that case, however, only one officer was covered, and it was held that settlement and release of another officer did not affect any right of subrogation, for none existed, their liabilities being several. In the instant case, the liability being joint, the release of Kann necessarily affects the subrogation right as against him.

The appellant argues, however, that the insurer being equally liable for Decker's defalcations, it is immaterial that Kann was released. This argument not only overlooks the fact of the release of Mrs. Decker but it is an attempt to sever the two liabilities in a manner that goes beyond anything in the statute. No authorities are cited for the proposition and we think it is unsound. The fact that there are two tortfeasors instead of one cannot affect the principle of the cases cited, that any

act that makes performance of the implied agreement to assign either impossible or useless must relieve the indemnitor. *Packham v. German Fire Insurance Co., supra.* While we have found no case directly in point, there is an analogy to cases dealing with the release of one of several co-obligors or co-principals, where rights of contribution exist either at common law or by statute. In such cases it is generally held that the release of one co-principal will release the surety of another. In 4 *Williston, Contracts* (Rev. Ed.) § 1220, it is stated as a general principle of suretyship that the release of a principal discharges the surety, "and if there are several principals, a release of any one will release the surety altogether." See also *Warman v. Hat Creek Ranch Co.,* 202 Ia. 198, 207 N. W. 532; *National Surety Co. v. George E. Bruce Lumber Co.,* 10 Cir., 60 F. 2d 847; *Gholson v. Savin,* 137 Ohio St. 551, 31 N. E. 2d 858, 139 A. L. R. 75; *Restatement, Contracts,* § 121. The effect given to a release may, however, depend upon the intention and perhaps upon a showing of prejudice. *Shriver v. Carlin & Fulton Co.,* 155 Md. 51, 65, 141 A. 434, 58 A. L. R. 767.

The appellant contends that the right of subrogation does not arise until the insured's total claim, whether insured in whole or in part, has been paid in full, and that the appellee would have no right to compete with the insured or share in the assets of the principal until the losses partially protected had been paid in full. He argues that this prerequisite has not been and cannot be met. It is of course true that a surety liable for only part of a debt does not become subrogated to the remedies available to the creditor unless he pays the whole debt or it is otherwise satisfied. *American Surety Co. v. Westinghouse Electric Manufacturing Co.,* 296 U. S. 133, 56 S. Ct. 9, 80 L. Ed. 105. It is admitted that the insured is entitled under the policies to retain sums collected from tortfeasors until its total losses for acts covered by the bonds are recovered. But this does not mean that the insured is at liberty to settle in advance the whole claim, including the portion to which the

surety would be equitably entitled, without the consent of the surety. *Cf. Weber v. United Hardware & Implement Mutuals Co.*, 75 N. D. 581, 31 N. W. 2d 456, 459.

The appellant contends, however, that there is no showing that except for the release the insured could have recovered the total losses from Kann and Mrs. Decker. If we assume, without deciding, that the burden rests upon the surety to show prejudice (*Cf. Chapman v. Hoage*, 296 U. S. 526, 56 S. Ct. 333, 80 L. Ed. 370, and *Aetna Casualty & Surety Co. v. Phoenix National Bank & Trust Co., supra*) it is sufficient to state that there was evidence of prejudice in the instant case. Kann, with his brother, was the principal owner of the Pittsburg Crushed Steel Company, and two other steel companies. He was the holder of a substantial number of shares of Triumph which he actually sold to a wholly owned subsidiary of the appellant. It appeared from a prospectus filed with the Securities and Exchange Commission on November 1, 1945, and read in evidence without objection, that Kann received for his stock holdings the approximate sum of $344,000 on September 30, 1944.

The appellant seeks to minimize the effect of this testimony by stating it offered evidence, which was not admitted, that at the time of the release to Kann on August 31, 1945, the United States Treasury had tax claims against him, embezzlements being then treated as income to the embezzler and taxable as such. But as we read the record, the appellant abandoned that line of testimony, after the court indicated it would be necessary to produce Kann and "not some fourth or fifth removed person". There was no proffer to show competition from the government, and no explanation of why the appellant should have been content to accept $65,000 as a settlement of the whole claim against Kann, when its subsidiary had admittedly paid $344,000 to him a few months before without attempting any set-off. In any event, since the principle of suretyship rests upon the variation in risk or undertaking, it is the loss of a

414

fair chance of recovery, not an absolute certainty, that constitutes a showing of prejudice. We think the appellee has made out a *prima facie* case.

Since we find that the chancellor was correct in holding that the appellee was discharged by the release to Kann, it is unnecessary to discuss the other points argued by the appellee.

*Judgment affirmed, with costs.*