## GEORGE L. SCHNADER, JR., INC. *v.* COLE BUILDING CO., INC.

[No. 418, September Term, 1963.]

18

*Decided July 18, 1964.*

*Motion for rehearing or, in the alternative, for modification of opinion filed August 5, 1964, denied September 15, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Samuel F. Kenney* and *Richard R. Beauchemin,* with whom was *Thomas F. Dempsey,* on the brief, for the appellant.

*Richard C. Murray,* with whom was *LeRoy E. Gerding,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

Although numerous questions are raised on this appeal, the principal one is whether the purchaser and present owner of an undeveloped portion of a platted subdivision or development of land in Baltimore County is entitled to recover from the seller and former owner of the whole subdivision, by way of subrogation or otherwise, a portion of what the present owner was compelled to pay for public improvements as an assignee of the public works agreement between the former owner and Baltimore County. George L. Schnader, Jr., Inc. (Schnader) is the appellant and Cole Building Company, Inc. (Cole) is the appellee.

Cole, as the former owner of the subdivision known as "Laureldale," entered into a public works agreement with the County on January 9, 1956, and by the terms thereof agreed, among other things "to assume the full cost of street paving, curbs and gutters" for the standard pavement width of a street in a cottage type of development. It thereafter developed a substantial portion of Laureldale and partially performed its obligations under the public works agreement. Aside from the lots subsequently sold to Schnader, Cole had sold some of the Laureldale lots to others both before and after homes had been built on them by Cole.

After a part of the paving had been laid, Cole, on October 28, 1958, conveyed to the County, for public highway purposes, all its right, title and interest, first, in and to the bed of Evergreen Drive (running from Jerald Drive to a point opposite the division line between Lots No. 61 and 62) ; second, in and to the bed of a street designated as Ivy Place on the plat but now known as Holly Place; third, in and to the bed of Jerald Drive; and fourth, in and to the bed of Laurel Drive (running from Jerald Drive to a point opposite the division line between Lots No. 96 and 97).

Subsequently, Cole and Schnader entered into an agreement on September 17, 1959, wherein Cole agreed to sell Schnader thirty-eight of the numbered lots in Laureldale, as well as the beds of such streets as were outlined in red on a plat made a

part of the contract of sale,[1] including John Drive and Ivy Place and the dead-end part of the latter between the side lines of Lots No. 12 and 13, and also agreed to assign to Schnader all its right, title and interest in the public works agreement.

In compliance with the contract of sale, Cole, on December 30, 1959, conveyed to Schnader Lots Nos. 3 to 18 inclusive, 40 to 43 inclusive, 46 to 50 inclusive, 54 to 61 inclusive, and 73 to 77 inclusive, together with all right, title, interest and estate of Cole in and to the beds of any streets not theretofore conveyed to the County, but no reference was made therein to the public works agreement.

Prior thereto, however, also in compliance with the contract of sale, Cole, on December 1, 1959, had assigned to Schnader (by an assignment executed by and between Cole, Schnader and the County) all its (Cole's) right, title and interest in that portion of the public works agreement affecting the same thirty-eight lots as were designated by number in the deed. As to such lots, Schnader accepted "all obligations" under the public works agreement "as now being assigned."

Thereafter, during the spring of 1960, Schnader began constructing homes on the lots it had purchased and requested the county department of public works to put the public works agreement in operation as to such lots. The department, however, refused to do so unless such of the unassigned portion of the agreement as had not been finished was completed at the same time. Both Schnader and the department requested Cole to deposit funds to cover the cost of completing the remainder of the unassigned portion of the agreement, but it refused to do so, and continued to refuse, despite repeated demands made by Schnader for compliance.

As of that time, Schnader had more than $500,000 invested in its thirty-eight lots and the homes it had constructed thereon,

---

1. The plat referred to was not positively identified. Two plats were received as exhibits at the trial, but there is a distinct variance between them (not clearly accounted for) with respect to the lots and streets outlined in red thereon. Neither delineation is in accord with the outlines of the thirty-eight lots actually sold and designated by numbers in the contract, deed and assignment of the public works agreement.

and, in order to save its investment, it entered into a supplementary agreement with the County on April 28, 1961, whereby it guaranteed payment of the entire uncompleted portion of the public works agreement between Cole and the County.

On May 18, 1962, Schnader conveyed to Baltimore County, for public highway purposes, all its right, title and interest in and to the beds of Ivy Place, Evergreen Drive, John Drive and Laurel Drive.

On the basis of all the documentary evidence, particularly the original public works agreement between Cole and the County and the assignment of the portion thereof relating to the lots sold by Cole to Schnader, it is apparent that Schnader was obligated to pay the cost of paving (as well as curbing and guttering) such portions of the unpaved streets as were applicable to its thirty-eight lots, but no more, and that Cole was liable for the remainder. It is not negated that the portion of the public works agreement for which Cole remained responsible was completed at a total cost of $8,283.60 and that Schnader paid therefor. Schnader, claiming reimbursement, sued Cole for that sum plus interest. The case was tried on April 10 and 11, 1963, and resulted in the entry of a judgment for costs on November 13, 1963, in favor of Cole against Schnader. This appeal followed.

The trial judge, despite his having stated in the course of his written opinion that there was a "fair inference that the parties never intended that Schnader should pay all of the [remainder of the] amount due under the public works agreement, but only that portion which was applicable to the lots conveyed to [it]" and that the assignment of a portion of the agreement confirmed that fact, concluded nevertheless that Schnader had voluntarily paid the County and that it, in the absence of a separate agreement between itself and Cole, was not entitled to recover from the latter that portion of the cost of completing the public works agreement which Schnader advanced for Cole, and entered a verdict in favor of Cole for costs.

Although Schnader advanced several theories as to why it was entitled to recover, its claim for reimbursement is primarily based on the doctrine of subrogation or substitution. The principle of subrogation is an equity doctrine, *Schaeffer v. Ster-*

*ling,* 176 Md. 553, 6 A. 2d 254 (1939), but in many jurisdictions it is recognized and enforced at law as well as in equity. See *Hartford Acc. & Indem. Co. v. First Nat. Bank & Trust Co. of Tulsa,* 287 F. 2d 69 (10th Cir. 1961); *Sullivan v. Naiman,* 32 A. 2d 589 (N.J.L. 1943); *Offer v. Superior Ct.,* 228 Pac. 11 (Cal. 1924); *Black v. Chicago G.W.R. Co.,* 174 N. W. 774 (Iowa 1919); *DeBrauwere v. DeBrauwere,* 126 N. Y. Supp. 221 (Sup. Ct. 1910). See also 50 Am. Jur., *Subrogation,* § 142; 83 C.J.S., *Subrogation,* § 64. This Court has not heretofore specifically stated that the doctrine of subrogation is cognizable at law as well as in equity, but several previous decisions have recognized the right in cases at law. See, for example, *Packham v. German Fire Ins. Co.,* 91 Md. 515, 46 Atl. 1066 (1900); *Maryland Trust Co. v. Poffenberger,* 156 Md. 200, 144 Atl. 249 (1929); *Noma Electric Corp. v. Fidelity & Deposit Co.,* 201 Md. 407, 94 A. 2d 277 (1953). Cf. *Orem v. Wrightson,* 51 Md. 34 (1879), where the right of subrogation was allowed in the Orphans' Court. Further, Maryland Rule 243 a (based on a former statute) expressly recognizes the right of a subrogee to seek a judgment at law, the only requirement being that "the action shall be brought in the name of the real party or parties in interest including those claiming by subrogation." When, therefore, an action at law is consistent (as this one is) with Rule 243, the right of subrogation should be recognized. See Mullen, *The Equitable Doctrine of Subrogation,* 3 Md. L. Rev. 201, 213. It should, of course, be borne in mind that subrogation is an equitable doctrine and that its operation at law is governed and controlled by the principles of equity. *Maryland Trust Co. v. Poffenberger, supra.*

In Sheldon, *The Law of Subrogation,* § 1, the term subrogation is defined as:

> "It is a substitution, ordinarily the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. More broadly, it is the substitution of one person in the place of another, whether as a creditor or as the possessor of any other rightful claim."

The person substituted "can exercise no right not possessed by his predecessor, and can only exercise such right under the same conditions and limitations as were binding on his predecessor." *Poe v. Philadelphia Casualty Co.,* 118 Md. 347, 353, 84 Atl. 476 (1912). Although it is difficult to lay down a general rule applicable to all cases in which subrogation is sought, the essential elements necessary for legal subrogation (as distinguished from conventional and statutory subrogation [2]) are: (1) the existence of a debt or obligation for which a party, other than the subrogee, is primarily liable, which (2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own rights and interests. See 50 Am. Jur., *op.cit.,* § 10; 83 C.J.S., *op.cit.,* §§ 3, 5. If these requirements are met, legal subrogation exists by operation of law without the consent of the creditor. Mullen, *op.cit., supra,* at p. 203.

On this appeal, Cole argues that the doctrine of subrogation was not raised below either in the pleadings or at the trial and that this Court is therefore precluded by Rule 885 from deciding the question of Schnader's right to recover as a subrogee. We think not.

Although the pleadings did not specifically claim the right of subrogation, we think Schnader was seeking recovery on this theory and that the essential elements necessary for its application were alleged (albeit somewhat ineptly) in the pleadings and established during the course of the trial. For equity cases applying subrogation under such circumstances, see *Reid v. Reid,* 348 P. 2d 29 (Or. 1959) ; *Burch v. Burch,* 165 So. 387 (Ala. 1936) ; *Bleckley v. Bleckley,* 5 S. E. 2d 206 (Ga. 1939) ; *Netherton v. Farmers' Exchange Bank of Gallatin,* 63 S. W. 2d 156 (Mo. App. 1933). As the application of subrogation at law is governed by equitable principles, we see no reason why Schnader should be denied its use in the case at bar.

Despite the fact that it had received direct benefits from the performance of the public works agreement by the County, Cole also argues that the public works agreement with the County

---

2. Note the distinctions made in 3 Md. L. Rev. 201; 50 Am. Jur., *Subrogation,* § 3; 83 C.J.S., *Subrogation,* §§ 3, 4.

was *ultra vires* in that the County assumed to pay a greater proportion of the total cost of performing the agreement than it was authorized by law to do, and that Cole was therefore under no legal obligation to complete the remainder of the agreement. The argument is not sound. The County was not a party to this action, but even if it had been a party and the alleged overpayment was made without authority, only the County could have asserted its lack of power to perform the agreement under the circumstances of this case. Cf. *Hanna v. Board of Education of Wicomico County,* 200 Md. 49, 87 A. 2d 846 (1952) ; *Roland Elec. Co. v. Baltimore,* 210 Md. 396, 124 A. 2d 783 (1956). Nor is there any merit to the other suggested defenses. Even if it is assumed, without deciding, that Cole did not promise or agree to build houses on all of the lots or otherwise develop all of Laureldale, it is clear that it was obliged under the public works agreement to "assume the full cost" of paving the streets in Laureldale and did not fully comply with its obligation. It performed a portion of the agreement and assigned that portion of it affecting the thirty-eight lots sold by it to Schnader. This, of course, had the effect of discharging Cole from its obligation to pave a portion of the streets on which such lots abutted and to substitute Schnader as the party responsible therefor, but it did not affect the responsibility of Cole for the unassigned portion of the agreement. When, however, the County and Schnader demanded that Cole comply with the terms of the agreement and assignment, it refused to deposit the cost of completing the paving with respect to lots not transferred to Schnader. As a result, Schnader had to pay the whole cost of completing the paving in the subdivision in order to protect its investment.

In taking such a course, it is clear to us that Schnader was not acting as a volunteer. It had already invested over $500,000 in the project and unless it agreed to also complete that portion of the public works agreement for which Cole was primarily responsible, the streets on which its thirty-eight lots fronted or otherwise abutted would remain unpaved. This would not only depreciate the value of the lots but would also impair Schnader's investment therein. One who is economically compelled to advance money, for which another is primarily liable, in order to

protect his interests or rights, is not treated as a volunteer. 50 Am.Jur., *op. cit.*, §§ 22, 23. And the one discharging the obligation can recover from the one primarily liable under the doctrine of subrogation. *Ragan v. Kelly,* 180 Md. 324, 24 A. 2d 289 (1942). Cf. *Barron v. Whiteside,* 89 Md. 448, 43 Atl. 825 (1899). We hold therefore that Schnader is entitled to recover from Cole the sum of $8,283.60 with interest from the date Schnader paid that sum to the County on behalf of Cole. Since the record does not indicate the date of such payment, the judgment will be reversed and the case remanded for the entry of a judgment in conformity with this opinion.

With this conclusion, we do not reach any of the other questions raised by the parties.

> *Judgment reversed and case remanded for the entry of a judgment in conformity with this opinion; the appellee to pay the costs.*