# DAVID SPRINGHAM ET AL. *v.* STEPHEN C. KORDEK

[No. 1742, September Term, 1982.]

*Decided July 13, 1983.*

The cause was argued before LISS, ADKINS and GETTY, JJ.

*Peter Max Zimmerman* and *Allan Culver, Jr.,* for appellants.

*Jack I. Hyatt* for appellee.

LISS, J., delivered the opinion of the Court.

Shakespeare, in his tragedy "King Lear," portrayed the bitterness of a parent plagued by ungrateful children. In Act I, IV 283, Lear laments,

Ingratitude, thou marble hearted fiend,
More hideous, when thou shows't thee
in a child,
Than the sea monster.

And again, in Act I, IV 312, Lear cries out,

How sharper than a serpent's tooth it
is
To have a thankless child.

This case illustrates that ingratitude is not the sole prerogative of ungrateful children.

Stephen C. Kordek, the appellee herein, and Edith Kordek were married in Maryland on March 31, 1940. Four children were born as a result of the marriage. The parties remained together until March 25, 1971, when Stephen left his wife and minor children. So far as the record discloses, the appellee made no payment for maintenance or support of his wife and/or children after he left the marital home in 1971.

Edith continued to live in the family home at 980 Dalton Avenue, Baltimore County, Maryland from the date her husband left the premises. In 1978, Edith found herself unable to continue to make the mortgage payments and pay the expenses on the property. The mother thereupon requested the children to make the monthly mortgage payments in the amount of $120.24 per month and to preserve, maintain and repair the property owned by Edith and Stephen as tenants by the entireties. Stephen was not advised of the request and did not make any request of the children. Edith died on April 18, 1981, and Stephen, as the surviving tenant by the entirety, became the sole owner of the property. The appellee, promptly after the wife's death, entered into a contract for the sale of the property in the amount of $33,000.

On August 3, 1981, the children of the appellee, who are the appellants herein, along with the personal representative of their mother, Edith's, estate, filed a bill of complaint in the Circuit Court for Baltimore County in which they sought to enjoin the sale of the property and to impress it with a lien for the monies expended by them at the request of Edith. Later, William C. Alvarese and his wife, contract purchasers of the Dalton Ave. property, filed a petition to intervene in which they requested the court to release the property from the suit and to permit the appellee to convey the property to them at time of settlement. The trial court, after a hearing on the petition to intervene, ordered on the 27th of October, 1981, that the property need not be impressed with a constructive trust, and that the appellees be allowed to transfer the property to the intervenors, provided that 50 percent of the proceeds of the sale to be paid to the clerk of the court to be held in escrow pending the outcome of the dispute, with the funds to be considered as a substitute for the realty. In compliance with this order, the sum of $13,224.91 was paid into the court subject to the further order of the court.

Thereafter, the controversy continued with respect to the sum paid into court. After various proceedings not pertinent to this appeal, an amended bill of complaint was filed. It

contained two counts: the first count asserted a claim by the appellant children for reimbursement out of the proceeds of the sale for payments made by them; the second count was a claim by the appellant personal representative seeking recovery out of the proceeds of the sale with respect to the expenditures made by the deceased mother for the purposes of preservation of the property. To this amended bill of complaint, the appellee demurred. After oral argument, the trial judge sustained the appellee's demurrer without leave to amend. It was from that judgment that this appeal was filed. Two questions are raised:

I. Did the children acquire rights as subrogees for payments made by them to discharge their parents' mortgage debt where the payments were made at the request of one of the parents and under a moral obligation to make such payments?

II. Was the wife's estate entitled to contribution for payments made by her on or on her behalf on account of a mortgage on jointly owned property after the parties were separated?

## I. and II.

We shall consider the questions together.

In Count I of the amended complaint, the children sought reimbursement out of the proceeds of sale for payments made by them at their mother's request, during her lifetime, to preserve the property.

During oral argument on the demurrer filed by appellee, on October 20, 1982, the children stated that they would prove they were not volunteers in complying with their mother's request for the necessary funds to preserve the property. However, the chancellor found, as a matter of law, that "they did it voluntarily." He rejected the argument that the children had expectations of being paid and saw no potential factual issues, apparently accepting Stephen Kordek's argument that the pleading was "totally defective."

Legal authorities agree that one who volunteers a benefit or intermeddles in the affairs of another cannot subsequently claim contribution or recover the value of a gratuitous gift through the equitable remedy of subrogation. *See Harford Bank of Bel Air v. Hopper's Estate,* 169 Md. 314, 181 A. 751 (1935); 83 C.J.S. *Subrogation,* § 2; Restatement of the Law, *Restitution,* § 2 (1937).

This volunteer concept upon which the chancellor relied must be understood within the doctrine of subrogation, recognized in Maryland as both an equitable and legal remedy. *George L. Schnader, Jr., Inc. v. Cole Building Co.,* 236 Md. 17, 202 A.2d 326 (1964).[1]

The essential elements, set forth in *Schnader,* are:

(1) the existence of a debt or obligation for which a party, other than the subrogee, is primarily liable; which

(2) the subrogee, who is neither a volunteer nor an intermeddler, pays or discharges in order to protect his own interests. *Id.,* at 23.

It has been held:

A mere volunteer who, without any duty, moral or otherwise, pays the debt of another is not entitled to subrogation. 73 Am.Jur.2d *Subrogation* § 14.

The meaning of "volunteer" therefore is crucial. In this regard we have noted three applicable principles:

(1) One is not a volunteer when he has an interest of his own to protect. 73 Am. Jur.2d, *supra,* § 24; *Schnader, supra,* at 24-25.

(2) A payment is not voluntary when made under a moral obligation, since such is regarded in equity as a form of compulsion. *Robertson v. Mowell,* 66 Md. 530, 8 A. 273 (1887); *Milholland v. Tiffany,* 64 Md. 455, 2 A. 831 (1886).

---

1. *See also* 73 Am.Jur.2d *Subrogation* § 11, *et seq.;* Tiffany, *Real Property,* § 1507 (1939); Restatement of the Law, *Restitution* § 162 (1937).

(3) One is not a volunteer where he pays the debt at the request of a person whose liability he discharges. 73 Am.Jur.2d, *supra,* § 24.

It is obvious that the children were potential subrogees, since their claims correlate with each of these three principles.

(1) *The Children Had an Interest to Protect.*

At the time the children made the payments, they were potential heirs to the property. While their interest was uncertain or contingent, and depended on the mother surviving the father, they had a reasonable interest in preventing a default on the family house.

> The extent or quantity of the subrogee's interest which is in jeopardy is not material. If he has any palpable interest which will be protected by extinguishment of the debt, he may pay the debt and is entitled to hold and enforce it.... 73 Am. Jur.2d, *supra,* § 25.

(2) *The Children Had a Moral Obligation.*

Clearly, the children had a moral duty to assure that their mother would continue to have shelter after abandonment by the father.[2]

In *Robertson v. Mowell, supra,* a sister paid money on account of a mortgage due on the farm of her brother, who was ill and had met with financial misfortune. In rejecting the claim that she was a volunteer, the Court of Appeals said:

> It is true she was under no legal obligation to make this payment, but, under the circumstances stated, she cannot be regarded as a mere volunteer,

---

2. Similarly, a niece was held entitled to subrogation for support provided to an enfeebled aunt upon default of the uncle. Henry v. Knight, 122 N.E. 675 (Ind. App. 1919). She was not a volunteer because she discharged a strong moral obligation. And, in *Application of Mach,* 25 N.W. 2d 881 (S.D. 1947), a son was held subrogated to the rights of his invalid father against the mother who had failed in her support obligation.

officiously intermeddling with a matter which in no way concerned her. *Id.,* at 538.

In *Milholland v. Tiffany, supra,* at 460, it was said that:

> The law of substitution is not founded on contract or agreement but upon the equitable powers of the court . . . . (It) . . . may be applied on equitable principles on behalf of one who, at the instance and request of the debtor, pays a lien or incumbrance which he was under no legal obligation to pay, provided it does not interfere with intervening rights and circumstances.

(3) *The Children Acted at the Request of Their Mother.*

One is not a volunteer within the rule here considered when he pays the debt at the instance, solicitation or request of the person whose liability he discharges. *Cf.* "Mere request, without an understanding or agreement between parties that the benefit is not a gift, does not give rise to subrogation." 83 C.J.S., *Subrogation,* § 38. At minimum here the mother's request for help from her children reinforced the moral imperative that they provide support.

The father argues that since the children felt no moral obligation to him, the benefit conferred upon him was volunteered, an act of intermeddling. In addition, he argues that when the children "interfered" with his liability for the debt without his request to do so, they thrust the benefit upon him without the compulsion of moral obligation, since it would be necessary that the moral obligation run to both parents as co-obligors.[3]

As further evidence that the children in this case were not mere volunteers, we note that there is a statutorily imposed duty for children to provide shelter for destitute parents. Maryland Code (1957, 1982 Repl. Vol.) Article 27, Section

---

3. The appellee perhaps gives his children less credit than they deserve. It is obvious that they knew that by making the mortgage payments they protected not only their mother but their father as well. To suggest that the father has shown less than the minimum of gratitude which might be expected is to state the obvious.

104, provides in pertinent part that "[a]ny person having a parent . . . within this State, such parent . . . being destitute of means of subsistence, . . . who is possessed of or able to earn means sufficient to provide such parent . . . with necessary shelter, food, care and clothing, and neglects to do so, . . . shall . . . be deemed guilty of a misdemeanor. . . ." We do not reach the question of whether under the factual circumstances of this case the payments made by the children were required by the statute; however, it is clear that there was at least a duty on behalf of the children to provide their mother with shelter, food, care and clothing, assuming that she was unable to provide for herself.

In *Schilbach v. Schilbach,* 171 Md. 405, 189 A. 432 (1937), the Court of Appeals, in a case quite similar to the case at bar, said:

> The bill in this case is filed by two persons who, so far as this title is concerned, have no relation to each other. If they, or either of them, have paid a lien or incumbrance. . . at *the request of either of the cotenants,* there is no reason why such person should not have the right to assert the same against the property benefited. . . . If the third party is a volunteer, he would not have recourse against the property for reimbursement. . . . Recourse can only be had against the property for such claims as the wife might make if living, and then for payments made on account of liens, incumbrances, and permanent improvements at her request, the assumption being made on the allegations of the bill that nothing was done with the assent of the defendant. Inasmuch as it appears one or the other of the plaintiffs may have come within the rules here stated, the order of the chancellor will be affirmed without prejudice to the rights of the plaintiffs to severally seek the enforcement of the claims which they or either of them may have against the property which the defendant holds as survivor of the entirety. [emphasis supplied]. *Id.,* at 408-409.

Appellee next contends that the demurrer was properly sustained because appellants' amended bill of complaint did not contain the necessary averments that the children were under a compulsion, in the form of a moral obligation, to the father to discharge his debt, that the children had a protectable interest in their parents' property, that the children discharged their father's debt at their father's request, and the children lacked donative intent. *See Commonwealth of Virginia v. State of Maryland,* 32 Md. 501 (1870); 83 C.J.S., *Subrogation* § 9; *Harford Bank of Bel Air, supra;* Maryland Rules of Procedure, Rule 370 a 2.

We are satisfied that the amended complaint was sufficient in its averment that the abandoned mother requested the children to, and the children did, in fact, pay the mortgage, in accordance with *Schilbach, supra.*

As to the second count of the amended bill of complaint, it will be recalled that this is a claim by the deceased mother's personal representative, asserting the right to recover for expenditures made by the mother for preservation of the property. Simply stated, Count II embodies the principle established in *Crawford v. Crawford,* 293 Md. 307, 443 A.2d 599 (1982). That principle is that if a wife pays a mortgage on jointly owned property after her husband has abandoned her, she is entitled to contribution. Here, since the wife is deceased, her claim is advanced by her personal representative. It is a claim which may be in addition to or alternative to the claim stated in Count I of the declaration, depending upon the proof that may be produced at trial.

In *Crawford,* the Court of Appeals stated:

> Generally, one co-tenant who pays the mortgage, taxes, and other carrying charges of jointly owned property is entitled to contribution from the other.
>
> * * *
>
> This rule of contenancy [sic] applies equally to a tenancy by the entireties.

\* \* \*

Therefore, a co-tenant in a tenancy by the entireties is entitled, to the same extent as a co-tenant in a tenancy in common or joint tenancy is entitled, to contribution for that spouse's payment of the carrying charges which preserve the property.

\* \* \*

Thus, it should be clear ... that the presumption of gift doctrine is alive in Maryland, if at the time of the transaction(s) in question, the parties are living together as husband and wife. When they are not, the reason for the presumption is not present and it does not arise. ... *Id.,* at 309-314.

As the Court of Appeals stated in *Schnader, supra:*

Although the pleadings did not specifically claim the right of subrogation, we think Schnader was seeking recovery on this theory and that the essential elements necessary for its application were alleged (albeit somewhat ineptly) in the pleadings and established during the course of the trial. ... [citations omitted]. As the application of subrogation at law is governed by equitable principles, we see no reason why Schnader should be denied its use in the case at bar. *Id.,* at 23.

The demurrer itself was insufficient because it failed to set forth the specific grounds for demurrer. Maryland Rule 345 b. *Hall v. Barlow Corporation,* 254 Md. 28, 255 A.2d 873 (1969).

Inasmuch as *Crawford, supra,* establishes the validity of "claims [Edith Kordek] might make if living," and the foregoing discussion, including the holding in *Schilbach,* establishes at least the possibility of the right of subrogation for Edith Kordek's children in their claims, the chancellor

erred as a matter of law in sustaining the appellee's demurrer to the amended complaint without leave to amend.

*Order reversed, case remanded, costs to be paid by appellee.*