**INTERSTATE FIRE & CASUALTY COMPANY, Plaintiff,**

v.

**The PACIFIC INDEMNITY COMPANY and Chubb & Son, Incorporated, Defendants.**

**Civ. No. H–81–2895.**

United States District Court, D. Maryland.

Aug. 3, 1983.

E. Dale Adkins, III, Baltimore, Md., for plaintiff.

Kieron F. Quinn, Patrick K. Cameron and Ober, Grimes & Shriver, Baltimore, Md., for defendants.

ALEXANDER HARVEY, II, District Judge.

The dispute in this case is similar to the one presented to this Court in *Chicago Insurance Company v. Pacific Indemnity Company,* 502 F.Supp. 725 (D.Md.1980). As in that case, a primary insurer under a professional liability insurance policy and an excess insurer dispute the meaning of a coverage provision in the former's policy. Interstate Fire & Casualty Company (hereinafter "Interstate"), the excess insurer, is here seeking to recover $200,000 from The Pacific Indemnity Company (hereinafter "Pacific"),[1] the primary carrier. Plaintiff asserts that defendant Pacific was under its policy required to pay that sum as a part of the settlement of a malpractice suit brought against the parties' insured, a physician.

Presently pending in the case are cross-motions for summary judgment. Extensive memoranda and exhibits have been filed in support of and in opposition to these mo-

tions. Oral argument by counsel has been heard in open Court. As the facts here are not in dispute, the case is appropriately one for disposition under Rule 56, F.R.Civ.P.

On September 14, 1979, a Statement of Claim, HCA No. 79–171, was filed in the Health Claims Arbitration Office of Maryland against Dr. Vibhakar J. Mody and others. The claimants were George M. Cross, Jr. (an infant), Barbara Ann Cross (his mother) and George M. Cross, Sr. (his father). Essentially, the claimants alleged that the negligence of Dr. Mody in delivering the Cross infant during his birth caused (1) the infant to suffer permanent brain damage, (2) his mother to suffer physical injuries as well as emotional shock and pain, and (3) his father to incur various medical and educational expenses.

At the time of the Cross infant's birth, Dr. Mody was insured by defendant Pacific under an obstetricians' and gynecologists' policy providing primary medical malpractice liability coverage. Dr. Mody was further covered by an excess medical malpractice liability policy issued by plaintiff Interstate. The primary policy had $200,-000/$600,000 policy limits while the excess policy had a $1,000,000 limit.

Shortly before the scheduled arbitration hearing, the parties entered into settlement negotiations, which culminated in a settlement of all claims against Dr. Mody for $560,500. In a letter dated March 25, 1981 and sent to the attorney for Interstate, claimants' attorney stated that the settlement sum would be divided as follows: George M. Cross, Jr.—$350,000, George M. Cross, Sr.—$200,000, and Barbara Ann Cross—$10,500. These were also the amounts set forth in the releases, which were executed on April 6, 1981.

At the time of the settlement, Interstate and Pacific disputed the amounts that each was required to pay under each respective policy. Pacific agreed that the claim of Barbara Ann Cross, the mother, was a sepa-

---

**1.** Also named as a defendant is Chubb & Son, Incorporated, Pacific's representative in Mary- land.

rate claim under its policy and paid the sum of $10,500 to satisfy that claim. However, Pacific took the position that it was required to pay no more than $200,000 additionally because the claims of the Cross infant and his father were not separate claims and because the policy limit for any one claim was $200,000. Interstate, the excess carrier, accordingly contributed $350,-000 to the settlement and thereupon sued Pacific in this Court to recover the additional amount which plaintiff claims that defendant Pacific was legally required to pay under applicable provisions of Pacific's primary policy.

In this action, Interstate concedes that under its excess policy it was required to contribute $150,000 to the settlement. However, it contends that the claim of the infant and the claim of the father are not a single claim under Pacific's primary policy and that defendant was therefore obligated to contribute $200,000 for the settlement of each of those claims, or a total of $400,000. Plaintiff is here seeking to recover $200,000 from defendant Pacific plus interest and costs. The issue presented is whether under the terms of the primary policy defendant was obligated to contribute to the settlement of the claim of George M. Cross, Sr. as well as to that of his infant son.

The pertinent section of Pacific's policy is "Coverage A—Individual Professional Liability." Under Coverage A, Pacific agreed to

> pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
> ... injury arising out of the rendering of or failure to render during the period, professional services by the individual insured, or by any person for whose acts or omissions such insured is legally responsible, except as the individual insured's profession described in the declarations ...

The policy's limits, as stated in Part I of the Declaration Sheet, are $200,000 for "each claim" and $600,000 in the "aggregate." These limits are incorporated into the policy by the following provision:

> ... the liability of the company for damages because of injury to which this insurance applies, sustained by any one person, shall not exceed the limit of liability stated in Part I of the declarations as applicable to each claim. In addition, the limit of the company's liability under Part I for all damages shall not exceed the limit of liability stated in Part I of the declarations as 'aggregate.'

Another significant provision of the Pacific policy is the following definition: "each claim means all claims or suits brought on account of injury sustained by any one person."

Plaintiff argues that this Court's decision in *Chicago Insurance Company v. Pacific Indemnity Company, supra* (hereinafter *Chicago I*) is controlling. Defendants, on the other hand, rely on a later decision of the Eastern District of Pennsylvania rendered in a suit between the same parties, namely *Chicago Insurance Company v. Pacific Indemnity Company,* 566 F.Supp. 954 (E.D.Pa.1982) (hereinafter *Chicago II*), aff'd per curiam, (3d Cir. July 5, 1983). But neither of those two cases is controlling in this particular action. Precisely the same insurance policy of Pacific was construed in both *Chicago I* and *Chicago II.* However, the professional liability insurance policy of Pacific in this case contains additional provisions which pose quite a different issue to the Court from the one presented in both *Chicago I* and *Chicago II.* One of the issues presented in both of those cases was whether separate claims had been settled so that the primary insurer was responsible for payment of the separate claims before the excess carrier became obligated to make payments. The policy limit in this case is $200,000 for "each claim." Unlike the policies in the other two cases, in the one involved here the word "claim" has been specifically defined as follows: "each claim means all claims or suits brought on account of injury sustained by any one person." Thus, the narrow issue in this case involves interpretation of the word "injury." If, as defendant argues, that word means "personal injury," then defendant is not obligated to contribute $200,000

towards settlement of the claim of George M. Cross, Sr., since his claim as father of the infant was for an economic loss. On the other hand, if, as plaintiff argues, the word "injury" in the policy includes economic or financial injury, then the father's claim would be separately covered and defendant would be required to contribute an additional $200,000 towards the settlement.

The parties' reliance on *Chicago I* and *Chicago II* respectively, is misplaced because the results reached in those cases are not inconsistent. In *Chicago I,* suit had been filed in the Superior Court of Baltimore City against three doctors and the partnership which they had formed. As in this case, the claims asserted were by an infant, his mother and his father. It was alleged that negligence by attending obstetricians in the course of delivering the baby had caused permanent brain damage to the infant, personal injuries to the mother and economic loss to the father for sums required to be spent by him to care for his injured child.

The principal dispute in *Chicago I* concerned the relationship between the coverage provided the individual doctors for their own negligence ("Coverage A") and that provided to their partnership and to the members of their partnership for vicarious liability ("Coverage B") under Pacific's primary policy. In deciding the primary dispute, this Court ruled that Coverage B was available and that plaintiff was entitled to a recovery from Pacific. That ruling raised a subsidiary question, namely whether Pacific owed plaintiff $50,000 or $100,000. To decide this secondary issue, it was necessary to determine whether there were separate claims. In *Chicago I,* counsel characterized the issue as whether there were three separate claims (plaintiff's argument) or, because all three claims arose from the same "occurrence," whether there was only one (defendant's argument). This Court ruled that there were three separate claims and that Pacific was therefore responsible for

the full $100,000 under its primary policy. This Court did not consider the question raised here, namely whether the word "injury" included economic injury to the father as well as personal injury to the infant.

In *Chicago II,* Judge Fullam correctly pointed out that this Court's conclusion that there were three separate claims was not essential to the Court's holding in the second part of its opinion. Both the mother and the infant had sustained personal injuries so that there were admittedly at least two separate personal injury claimants without regard to the claim of the husband. The settlement in *Chicago I* was in the amount of $300,000 and the limits of liability under the coverages was $100,000/$300,000. It was agreed in *Chicago I* that Pacific should have paid $200,000 under Coverage A and the question was whether there was additional $100,000 coverage under Coverage B. Since there were two separate personal injuries involved, it is apparent that Pacific was responsible for the additional $100,000 whether or not the husband's claim was held to be a separate, compensable claim under the policy.

Defendant Pacific now concedes that *Chicago I* was correctly decided because separate personal injuries of the mother and of the infant were involved. Moreover, defendant Pacific has further conceded here that under the policy in this case, the mother's claim and the infant's claim should not be treated as a claim for a single injury for purposes of determining the policy limits. Thus, it is agreed that under the policy in this case, Pacific would be obligated to pay $200,000 toward settlement of the claim of the infant and $200,000 in addition towards settlement of the claim of the mother.[2]

It is therefore apparent that *Chicago I* is not controlling here since its essential holding is not challenged by defendants in this case, nor was it questioned in *Chicago II.* Defendant argues, however, that *Chicago II* entitles it to judgment because Judge Fullam there held that the wife's claim and a

---

2. Indeed, defendant in this case has contributed $10,500 towards the settlement representing

the portion allocated to the mother's claim.

joint claim for loss of consortium asserted on behalf of the husband and the wife constituted but a single claim under the policy. Reviewing the law of Pennsylvania, the Court in *Chicago II* concluded that the husband's claim was a derivative one, which did not constitute a separate claim under the policy. The Court stated that the factor which determined the limit of liability under a medical malpractice insurance policy is the number of patients injured by the alleged malpractice and not the number of persons adversely affected as a result of the patient's injury. Very recently the Third Circuit affirmed this ruling of Judge Fullam. *Chicago Insurance Company v. Pacific Indemnity Company, et al.,* (3d Cir. July 5, 1983). In its *per curiam* opinion, the Court merely said the following:

> After consideration of all contentions by appellant, namely, that the district court erred:
>
> 1) in granting summary judgment despite the existence of a material issue of fact, and
>
> 2) in holding that each insured doctor's failure to perform a biopsy and the separate claim of the decedent and her husband constituted but a single injury under the appellee's insurance policy.
>
> IT IS ADJUDGED AND ORDERED that the judgment of the district court be and is hereby affirmed.

This Court concludes that *Chicago II,* like *Chicago I* is not controlling in this case. In *Chicago II,* a different insurance policy was before the Court, and a different definition of the word "claim" was there involved. Moreover, Pennsylvania law rather than Maryland law was applied by the Court. In the pending diversity action, Maryland law is controlling.

 In Maryland, an insurance policy is a contract and is to be read as any other contract. *Little v. First Federated Life Ins. Co.,* 267 Md. 1, 296 A.2d 372 (1972). The words of an insurance policy are to be given their ordinary meaning. *C & H Plumbing and Heating, Inc. v. Employers' Mut. Cas.*

*Co.,* 264 Md. 510, 287 A.2d 238 (1972). It is likewise settled in Maryland law that absent ambiguity the construction of an insurance contract is a matter of law for the court. *Government Employees' Insurance Company v. DeJames,* 256 Md. 717, 261 A.2d 747 (1970). Maryland courts have also recognized that the standard for interpretation of an insurance policy in Maryland is somewhat different from that of many other states. *Simkins Industries, Inc. v. Lexington Insurance Company,* 42 Md.App. 396, 401, 401 A.2d 181 (1979).

As noted, the policy limits here are $200,000 for "each claim." Each claim has been specifically defined to mean "all claims or suits brought on account of injury sustained by any one person." Defendant Pacific contends that the Court should construe this language to mean "all claims or suits brought on account of personal injury sustained by any one patient."

If the words used are given their ordinary, customary and normal meaning, it is apparent that defendant's construction of the language in question must be rejected. The broader word "injury" was used rather than the qualified words "bodily injury" or "personal injury." Quite clearly the broader word "injury" would include bodily injury, personal injury and economic injury. Furthermore, the broader word "person" was used rather than the more specific word "patient." To substitute the word "patient" for the word "person" would impart a meaning to the language which could hardly have been intended. It was certainly well known that claims are asserted by husbands on behalf of their wives or children for the recovery of medical and other expenses which the husband might be legally compelled to pay. Had the intention been to restrict the policy limits to a claim asserted on behalf of a patient for personal injury, the more precise terms would certainly have been used.

The word "injury" has been defined as "the invasion of any legally protected interest of another," *Restatement (Second) of Torts,* § 7 (1965), and as "Any wrong or damage done to another, either in his per-

son, rights, reputation or property." Black's Law Dictionary (4th Ed.1951). In *St. Paul Fire & Marine Insurance Company v. United States Fire Insurance Company,* 655 F.2d 521 (3d Cir.1981), the district court had held that the term "injury" in a professional malpractice insurance policy did not include a personal injury claim against the insured based on allegations of slander. In reversing, the Third Circuit ruled that the term "injury," could not be construed as meaning only bodily injury, but also would include a claim for personal injury such as slander. In *Sossamon v. Nationwide Mutual Insurance Co.,* 243 S.C. 552, 135 S.E.2d 87 (1964), the Court went so far as to construe the words "personal injuries" to include both the wife's claim for bodily injury and the husband's claim for loss of consortium and medical expenses. The same result was reached by the Court in *Malone v. Costa,* 151 Fla. 144, 9 So.2d 275 (1942).

Defendants argue that the father's claim is derivative in nature and cannot be considered separate from that of the infant. Although this may be true under Pennsylvania law as analyzed by Judge Fullam in *Chicago II,* it is not the law in Maryland. As the Court of Appeals said in *Hudson v. Hudson,* 226 Md. 521, 529–530, 174 A.2d 339 (1961):

> ... We have little difficulty reaching the conclusion that the prevailing view is the proper one, namely that when a parent is entitled to recover for medical expenses incurred as a result of negligent injuries to his minor child the parents' cause of action is not derivative, in a legal sense, from the infant's cause of action, but is a separate and distinct ground for recovery vested in the parent.

Defendants concede that under *Hudson* a parent as next friend may sue for damages for injury to a child, but argue that such damages cannot be split up in order to bring the claim within higher policies. In support of that contention, defendants rely on *American Fidelity and Cas. Co. v. Mahon,* 170 Md. 573, 185 Md. 330 (1936) and *Traveler's Indemnity Co. v. Cornelsen,* 272 Md. 48, 321 A.2d 149 (1974). Neither of those cases is apposite here because both involved the interpretation of policies which included the words "bodily injury." Had those words been used in the policy here, defendant would be correct in asserting that the claim of the father for economic injury would not be a separate claim to which the policy limit of $200,000 would be applicable. If anything, the *Mahon* and *Cornelson* decisions support the position taken by plaintiff in this case, namely that the word "injury" is a much broader term than the words "bodily injury" or "personal injury."

Cases from other jurisdictions relied upon by defendants are likewise not pertinent here. In each such case cited, the policy construed contained the more limited term "bodily injury" and not the more general term "injury." See *Gaines v. Standard Accident Ins. Co.,* 32 So.2d 633 (La.App.1948); *Smith v. Cassida,* 403 Pa. 404, 169 A.2d 539 (1961); *Faber v. Roelofs,* 311 Minn. 428, 250 N.W.2d 817 (1977); *West American Insurance Company v. Buchanan,* 11 Wash.App. 823, 525 P.2d 831 (1974).

■ In support of their motion for summary judgment, defendants have filed various affidavits and exhibits which they contend support the construction of this insurance policy which they urge here. This extrinsic evidence will not be considered by the Court. Under Maryland law, extrinsic evidence is admissible in a case involving interpretation of an insurance policy only if the language of the policy is ambiguous. *Truck Insurance Exchange v. Marks Rentals,* 288 Md. 428, 433, 418 A.2d 1187 (1980). This Court has concluded that no ambiguity exists in connection with the interpretation of this policy. The word "injury" is clearly broader than the more limited words "bodily injury" or "personal injury."

■ Finally, defendants, relying on *United States v. Eastport Steamship Corporation,* 255 F.2d 795 (2d Cir.1958) and other similar cases, argue that plaintiff lacks standing to bring this suit because it made a voluntary payment of a disputed amount. There is no merit to this contention. One who is economically compelled to advance

money for which another is primarily liable in order to protect his interests or rights is not treated as a volunteer. *Schnader, Inc. v. Cole Building Co.,* 236 Md. 17, 202 A.2d 326 (1964); *Government Employees' Ins. Co. v. Taylor,* 270 Md. 11, 310 A.2d 49 (1973). Under its excess policy, plaintiff was required to pay on behalf of its insured the amount of the father's claim when defendant Pacific refused to do so. Had plaintiff likewise declined to pay the amount agreed upon as a reasonable settlement of this claim, it would have been subject to suit by the insured, including a claim that plaintiff had acted in bad faith by not making payment pursuant to the terms of its excess policy. As the Court pointed out in *Aetna Casualty Insurance Company v. Buckeye Union Casualty Company,* 157 Ohio St. 385, 105 N.E.2d 568, 571–572 (1972), one secondarily liable who is forced to pay because of the refusal or failure after demand of the one primarily liable to discharge the obligation has the right of indemnity from the one primarily liable. This Court is satisfied that the plaintiff, as the excess insurer which made the payment in question, has standing to sue defendant Pacific, the primary carrier.

For the reasons stated, this Court concludes on the record here that the term "each claim" in Pacific's policy includes the claim brought on account of economic injury sustained by the father, as well as the two claims for personal injuries sustained by the mother and by the infant. There were therefore three separate claims involved here rather than two, and under the policy limits Pacific was obligated to pay $200,000 for each such claim. Plaintiff, the excess insurer, is therefore entitled to recover $200,000 from defendant, the primary insurer. Judgment is accordingly entered in favor of the plaintiff in the amount of $200,000 plus costs.