1997 ME 54

**Jean M. NAPPI, Personal Representative of the Estate of Nicholas M. Nappi**

v.

**NAPPI DISTRIBUTORS.**

Supreme Judicial Court of Maine.

Argued Jan. 8, 1997.
Decided March 31, 1997.

E. Stephen Murray (orally), Michael D. Traister, Murray, Plumb & Murray, Portland, for plaintiff.

Thomas F. Monaghan, (orally), Thomas G. Leahy, Monaghan, Leahy, Hochadel & Libby, Portland, for defendant.

Before ROBERTS, GLASSMAN, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

[¶ 1]   Jean M. Nappi, personal representative of the estate of Nicholas M. Nappi, appeals from the judgment entered in the Superior Court (Cumberland County, *Bradford, J.*) following a nonjury trial finding that Nappi Distributors was entitled to a setoff of $71,074.08 against the estate's claim pursuant to the doctrine of equitable subrogation. Jean contends that the doctrine of equitable subrogation is not applicable in this case. We affirm the judgment.

[¶ 2]   Nappi Distributors, a Maine corporation, is a wholesale distributor of beer and wine. Nicholas Nappi, a co-founder, was its president and chief executive officer and a major shareholder. After Nicholas died in

October 1993, his wife, Jean, was appointed the personal representative of his estate.

[¶ 3] Nappi Distributors had executed two demand notes as evidence of loans Nicholas had made to the corporation. After his death, Jean became aware that Nappi Distributors was paying for some construction work Nicholas had authorized at a house on Summit Street in Portland. By letter dated November 16, 1993, Jean stated that she had not authorized further work, requested that no additional payments be made, and warned that any such payment would be at the company's risk. Nevertheless, in December the company made two payments for the completion of the work on the Summit Street property. In her capacity as personal representative of the estate, Jean demanded repayment of the loans.

[¶ 4] Approximately six months later, Nappi Distributors made a partial payment to Nicholas's estate. The company contended, however, that it was entitled to a setoff for the remaining amount because of various payments, including the cost of completing the addition on the Summit Street house. Jean disputed that the setoff was justified, and in March 1994, she sued Nappi Distributors for the balance due on the notes.

[¶ 5] At the nonjury trial, Elmer Alcott, the vice president and controller of Nappi Distributors, testified that the company had not entered into any formal contract to pay for the construction work. He testified, however, that Nicholas had agreed to forego collection on a promissory note from his brother Philip, the general contractor, in exchange for his help in putting the job together. Alcott testified that Nicholas talked with him every day about the addition and that he intended to finish it. Alcott testified that the corporation expended funds to complete the addition after Nicholas's death, believing that Nicholas had established a legitimate contract to pay for the addition.

[¶ 6] Susan Hezlep testified that she currently lives in the Summit Street house that is owned by her sister and brother-in-law, Nancy and Edmund Beaulieu. She testified she had known Nicholas for twenty years,

that they were very good friends, but that they did not have a sexual relationship. In 1983, she was diagnosed with multiple sclerosis and was assisted from that point on by Nicholas. She testified that Nicholas was like a father to her and that he had promised to pay for the addition. Edmund Beaulieu testified that he purchased the property on Summit Street in 1989 to accommodate Hezlep because of her illness. He testified that neither he nor Hezlep provided any consideration for Nicholas's promise to build the addition, and that without Nicholas's encouragement no addition would have been built. Nancy Beaulieu testified that Nicholas told her he was *going to pay for the addition* and he "assured [her that] there was nothing to worry about." After the trial, the court determined that Nappi Distributors was entitled to a setoff by equitable subrogation for the payments made for the addition. This appeal followed.

■ [¶ 7] Jean contends that the court's application of the doctrine of equitable subrogation in this case was erroneous. She argues that Nicholas had made an unenforceable oral promise to build the addition that was not supported by consideration and that Nappi Distributors is not entitled to equitable subrogation because it is essentially a stranger to Nicholas's alleged obligation to Susan Hezlep and the Beaulieus. We review the record to determine whether there is competent evidence to support the court's equitable determinations. *United Carolina Bank v. Beesley*, 663 A.2d 574, 576 (Me.1995) (equitable subrogation); *cf. Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me.1994) (unjust enrichment).

■ [¶ 8] Equitable subrogation is "a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." *United Carolina Bank*, 663 A.2d at 576 (citation omitted). It is "a concept derived from principles of restitution and unjust enrichment." *North East Ins. Co. v. Concord Gen. Mut. Ins. Co.*, 433 A.2d 715, 719 (Me.1981).[1] The

1. Restatement of Restitution § 162 (1937) pro-     vides:

Vermont Supreme Court has stated, "Equity should not, however, encourage a person to intrude upon the affairs of another. Persons should be able to deal with whom they choose. There is no reason to force a person to deal with someone he has not chosen simply because that someone intrudes and undertakes a duty of the first person." *Norfolk & Dedham Fire Ins. Co. v. Aetna Casualty & Sur. Co.*, 132 Vt. 341, 318 A.2d 659, 661 (1974). In *North East* we stated that a party is not entitled to subrogation when "he voluntarily or officiously satisfies another's obligation, under no legal or moral obligation to do so or with no interest of his own to protect." 433 A.2d at 719 (citations omitted). We concluded, however, that the term "volunteer" "should be narrowly and strictly interpreted to allow liberal application of the doctrine of subrogation, and that any doubt as to the applicability of the exception should be resolved against the existence of volunteer status." *Id.* (citations omitted). In addition, we reasoned that one is not a volunteer if he pays "under a mistaken belief that he had an obligation to pay or interest to protect." *Id.*

[¶ 9] We conclude that Nicholas was primarily liable on the debt incurred to finish the addition on the Summit Street house. Although the parties focused exclusively on whether consideration existed to support an oral contract, Nicholas, had he remained alive, would have been estopped to argue the lack of consideration under the principles of promissory estoppel. *See June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, 49 (Me.1996) (citing *Chapman v. Bomann*, 381 A.2d 1123, 1127 (Me. 1978)). RESTATEMENT (SECOND) OF CONTRACTS § 90 (1981) provides:

A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action

or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

The "promise need not be express but may be implied from a party's conduct." *Martin v. Scott Paper Co.*, 511 A.2d 1048, 1050 (Me. 1986). In the context of the transfer of land, when the donee has made substantial improvements to the land in "reliance upon the promise to convey the land, courts will enforce the promise to convey." *Tozier v. Tozier*, 437 A.2d 645, 648 (Me.1981). In this case there was testimony that Nicholas had promised Hezlep and the Beaulieus that the addition would be completed. They testified that Nicholas was the moving force behind the construction of the addition for Hezlep and they permitted the project to proceed in reliance on Nicholas's promise. Based on equitable principles, Nicholas's promise was enforceable in spite of the absence of consideration and he would have been liable to pay for the completion of the addition.

[¶ 10] Moreover, Nappi Distributors did not act in a voluntary or officious manner in making the payments to finish construction of the project and then setting off the amounts against money that it owed to Nicholas. Although at the trial the focus was on whether Nappi Distributors was legally or morally obligated to pay for the project, we conclude that the company's payment of the cost of the addition, in an attempt to support its own reputation and interest, was sufficient to entitle it to be equitably subrogated in this case.

[¶ 11] We have said that a person satisfying the debt of another is not acting voluntarily or officiously if he has an interest to protect. *North East Ins. Co.*, 433 A.2d at 719. Although the majority of cases involve persons or entities who are directly connect-

Where property of one person is used in discharging an obligation owed by another ... under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder.
Comment b states in part:
On the other hand, where the plaintiff is not officious, and he uses his property or his prop-

erty is used in discharging the obligation of another ... he is entitled to reimbursement and is entitled to the remedy of subrogation to obtain reimbursement. The plaintiff is not officious where he makes a payment under a mistake.... He is not officious where he was under a duty to make the payment.... He is not officious where he makes the payment to protect an interest of his own....

ed to the debt, some cases involve more tangential interests, such as defendants involved in litigation. *See, e.g., Chenery v. Agri–Lines Corp.,* 115 Idaho 281, 766 P.2d 751, 755–56 (1988) (pump repairer being sued by lessee and owner). Courts also have held that an economic interest may be sufficient. *See, e.g., Springham v. Kordek,* 55 Md.App. 449, 462 A.2d 567, 569–70 (1983) (potential heirs to property who had uncertain and contingent interest). Finally, an interest in one's reputation may suffice to satisfy the standard for equitable subrogation. *See, e.g., Certain–Teed Products Corp. v. Goslee Roofing & Sheet Metal, Inc.,* 26 Md.App. 452, 339 A.2d 302, 316 (1975) (subcontractor who re-roofed building and sued supplier of roofing material was concerned "that its good business name be upheld in the area"). "The extent or quantity of the subrogee's interest which is in jeopardy is not material. If he has any palpable interest which will be protected by the extinguishment of the debt, he may pay the debt and be entitled to hold and enforce it just as the creditor could." 73 Am.Jur.2d *Subrogation* § 25, at 615 (1974).

[¶ 12] In this case, Nappi Distributors argues that it would have reflected badly on the business if the project were not completed. The company also argued that there was a threat of litigation against it for debt collection by creditors because the company's name was on some of the contractors' bills. Nappi Distributors cannot reasonably be considered a stranger in the circumstances of this case because it was protecting its well-being. The court did not err in applying the doctrine of equitable subrogation.

The entry is:

Judgment affirmed.

